GULF, COLORADO & SANTA FE RAILWAY COMPANY v. L. C. YORK.

No. 6293.

1. **Contributory Negligence—Walking Upon Railway Track.**—The failure by one walking upon a railway track to listen and to look while upon such track to avoid collision with trains which may be expected to pass on the track is an entire failure of duty to take proper care. Such negligence would prevent a recovery for damage from a passing train on ground of contributory negligence.

2. **Fact Case.**—See facts held sufficient to show contributory negligence.

3. **Res Gestæ—Declarations by Employes.**—Declarations on the part of the engineer after the train had been stopped showing ill will and of a threatening nature toward one injured by the train upon the track are incompetent:

1. Not being *res gestæ.*

2. Declarations outside of the employment of the party making them.

4. **Charge Must Apply to Issues.**—See charges properly refused because not pertinent to the issues made by the testimony.

5. **Duty of Railway Trains Crossing Track of Another Railway.**—It is required by the statute of a railway train approaching a crossing upon another railway that the train be brought to a stop. No statute requires that signals by bell or whistle be given in approaching such crossing.

ERROR from McLennan. Tried below before Hon. Eugene Williams. The opinion states the case.

*W. M. Flournoy,* for plaintiff in error.—1. On contributory negligence. H. & T. C. Ry. v. Smith, 52 Texas, 178; G. H. & S. A. Ry. v. Bracken, 59 Texas, 71, Hoover v. Railway, 61 Texas, 503; T. & P. Ry. v. Harrington, 62 Texas, 597.

2. Declarations and threats by engineer after the train had been stopped. Hays v. H. & G. N. Ry., 46 Texas, 272–84; Patterson v. Railway, 18 Am. and Eng. Ry. Cases, 130, 137, 139; Wood v. Railway, 52 Mich., 402.

3. A new trial should have been granted. Chandler v. Meckling, 22 Texas, 41; Gibson v. Hill, 23 Texas, 83; Randall v. Collins, 58 Texas, 234; T. & P. Ry. v. Casey, 52 Texas, 122.

No brief for defendant in error has reached the Reporter.

HOBBY, JUDGE.—Under the view we take of this case it will be unnecessary to dispose of consecutively each assignment of error presented,

but we will consider such only as we regard most important and which in our opinion require a reversal of the judgment.

The plaintiff sued defendant to recover actual and exemplary damages for injuries inflicted on her minor son D. A. York through the alleged negligence of defendant's engineer in charge of its locomotive engine. It was alleged that the injuries permanently disabled her son mentally and physically and deprived her of the benefit of his services and earnings during his minority, and for which five thousand dollars actual damages were sought and twenty-five hundred dollars exemplary damages were claimed "by reason of the wanton, willful, and malicious acts of defendant's employes in not stopping said train or giving signals," etc.

The verdict was:  "We the jury find for plaintiff the sum of $500."

The thirteenth and fourteenth assignments raise the question of the sufficiency of the evidence to support the verdict, and are to the effect that the verdict is contrary to the evidence, because the testimony shows the injuries of D. A. York to have resulted from his own negligence and voluntary act.

Plaintiff's witness Reed testified that he was with D. A. York at the time of the injury, on October 24, 1884, at Temple, in Bell County. "We left Temple that night going home.  [Witness lived with York's mother, about seven miles from Temple.]  We were walking on the Santa Fe Railway in that direction.  At Temple the Missouri Pacific Railway crosses the Santa Fe close to the Missouri Pacific depot.  We left Temple about ten o'clock at night.  It was a tolerable dark night, drizzling rain—not much, just sprinkling.  York and myself were not looking ahead; wind blowing pretty hard from the north; it struck us on the side of the face; we had our hats pulled down over our faces to keep the rain from hitting us in the face; York and I had large broad-brimmed hats; he was about ten feet ahead of me; the train knocked York off the track.  At that time we were on the Santa Fe Railway; we had crossed the Missouri Pacific Railway about 350 feet. I saw the train about the time it struck York; not before.  Heard no bell or whistle.  York and myself were walking south; the train was going north; we were going meeting the train.  I did not see the train until it struck York, and I was in ten feet of York; we were walking along the outside of the track on the ends of the ties; we had our hats pulled down over our eyes; we were looking right straight down; we didn't hear the train and were not looking for a train; did not see the headlight until it struck York; didn't see it down under my feet; it had a headlight.  York had not been drinking; he was cool sober; I never knew him to be drunk; I was with him all the evening and night; guess we were 350 feet from the Missouri Pacific depot.  *  *  *  I saw the back part of York's hat up, and know his hat was pulled down over his eyes; didn't see the headlight till I looked up."

D. A. York testified for plaintiff: "We left Temple that night about 11 o'clock going home. We lived about six miles from Temple, at my mother's, south of Temple. It was a tolerable dark night, and it was raining. We were walking on the Santa Fe Railroad; we had just got across the crossing where the Missouri Pacific crosses the Santa Fe. I was not looking ahead; I had my hat down over my eyes to keep the rain out; the wind was blowing from the north on the side of my face; my hat was a big white broad-brimmed hat, a new hat bought that evening. The engine and train coming up north struck me on the Santa Fe Railway. They backed the train and put me in the caboose. I did not see or hear the train before it struck me; I heard no bell or whistle. When they put me on the train they carried me to Temple and left me in the caboose that night. I was struck about a quarter of a mile from Temple."

A witness, John G. Agars, testified for the plaintiff that he had discharged the duties of fireman on the Texas Central Railway; that "the fireman's station is generally with the engineer; he has an opportunity for looking ahead once in awhile when not putting in coal; thought an engineer on a tolerably dark night, the train running fifteen miles an hour, could see the width of this room; could see an object but not tell exactly what it was; thought he could see a man ahead of him in time to signal; might not check up the train; could check slightly. If there was a man on the road walking on the track with his hat over his eyes the engineer could see the man but not his condition."

T. I. Hamil, for defendant, stated that "he was fireman on the engine on the night of October 24, 1884; saw York fifty steps from the engine, walking in the middle of the track; train running north, the man going south; train was running about twelve miles an hour; it was two and a half miles from Temple and one and a half miles south of the crossing of the Gulf, Colorado & Santa Fe Railway and Missouri Pacific Railway when I first saw him. I rang the bell; can't say whether the engineer gave any signal; engine had a headlight, burning brightly."

Such is a full statement of the facts and circumstances, disclosed by the record, under which D. A. York was injured. It is shown by the testimony of his mother that he was not quite 18 years of age at the time of his injury.

It is manifest, we think, from the evidence of the injured party himself, which was fully supported by his companion Reed, that the former did not exercise the most ordinary care or the least degree of prudence which it has been repeatedly held in this and other States is required of a person walking on a railroad track. The failure to listen and look while on the track to avoid an approaching train is, as has been said, not merely an imperfect performance of duty but an entire failure of performance, which will bar the right to recover damages if it contributed.

proximately to the injury.   A person who voluntarily exposes himself to such dangers as this, from which he might have saved himself by the proper use of his senses, contributes directly to his own injury, and no cause of action lies.   G. H. & S. A. Ry. v. Bracken, 59 Texas, 73.

In the case before us it is not only apparent from the plaintiff's evidence that no care or prudence whatever was exercised by York, but he voluntarily placed himrelf on the track in a position necessarily exposing him to dangers, and instead of using his senses of sight and hearing to avoid them, by his own act deprived himself of this means of protection by shutting out his vision and impairing his hearing by placing his "broad brim big white hat over his eyes" and "looking straight down." That the injury to York would not have happened but for his own negligence we think is too clearly shown by the facts to require discussion, and we are of opinion that the evidence does not support the verdict and judgment.

There are other questions raised by the assignments and other errors disclosed in the record which it is probably proper to notice.   The second and fourth assignments relate to the court's action in permitting the witnesses John W. Reed and D. A. York to testify to the threats of the engineer after York was injured.   This witness (Reed) was permitted to testify that "at the time D. A. York was injured the engineer in charge of the locomotive stopped it and came back and got down and said to York 'if he hadn't killed him he would take his coal pick and finish him.'"   To which defendant objected "because the threats of the engineer could not bind the company, being outside of and not within the line of the engineer's employment."

The witness York, the injured party, was asked the following questions by plaintiff:

Question.   Before they put you in the caboose did you see the engineer?

Answer.   No, sir, I never saw him; I heard him talk.

Q.   Did he talk to you?

A.   He was talking to some fellow that was there.

Q.   Was anything said about his having anything in his hand?

A.   I think somebody asked him what he was going to do with that bar in his hand.

Q.   What did he say in reply to that?

A.   He said, by God, he was going to finish me.

To all of which evidence the defendant objected "because the questions were 'leading,' and because any act of the engineer such as was elicited by the questions and answers were not binding on the defendant, and defendant could not be held to respond in damages for such acts and threats of the engineer; and said testimony tended to improperly prejudice the jury."

In this connection it will be proper to consider the third assignment, to

the effect that "the court erred in permitting Reed to answer a question propounded to him by the plaintiff's counsel as to what the engineer said about its being the first man he had ever run over." The bill of exception recites that the witness was asked, "What did he (the engineer) say just after York was injured? Did he say that he had ever run over anybody else before?" To which the defendant objected "because it was foreign to the case." The objection was overruled, and the witness answered that "the engineer said he had run over about thirty or thirty-five, and that was the first man he ever struck without killing."

There can be no doubt, we think, that the objections to all of this testimony should have been sustained. It certainly did not constitute a part of the *res gestæ* tested by the most liberal construction applied to that character of evidence. It was not descriptive or illustrative of the particular way in which the collision occurred. It was not admissible because not made by an agent in such manner as would bind his principal. To have had that effect it must have been made within the scope of the agent's authority with respect to the transaction in which the declaration or admission was made, and must have formed part of the *res gestæ*.

The threats or declarations are not shown by the proof to have been made while the engineer was in the discharge or performance of any duty in which he was authorized to act for the defendant. They were obviously made after the infliction of the injury, and not, therefore, a part of the *res gestæ*. The length of time in this case, however, would not of itself have rendered them inadmissible had they related to the nature or cause of the accident and been otherwise competent.

To whatever extent this evidence may have shown that the engineer acted from malice and may have been personally liable, it was nevertheless shown to be an act not within the line of his duty, and one for which the appellant is in no manner responsible. Patterson v. W. St. L. & P. Ry., 18 Am. and Eng. Ry. Cases, 137–9.

There was nothing in the pleadings which would have authorized any proof as a basis for a recovery of exemplary damages against appellant, if appellee could have recovered such damages at all. The evidence objected to was inadmissible for that purpose, and its tendency was to mislead if not to prejudice the jury.

The charge objected to under the seventh assignment, to the effect that if the jury found that the action of defendant's employes in driving said engine against York, if they so found, was wantonly, willfully, and maliciously done, as charged, they would find such damage (not to exceed $2500) as they might think a sufficient punishment to defendant for such act of its employes, was erroneous, as neither the allegations nor proof authorized it in this case. Hays v. I. & G. N. Ry., 46 Texas, 272.

The following charge given at the request of the plaintiff is assigned as error:

"1.    Under the law each locomotive engine approaching a place where two lines of railway cross each other is required before reaching such railroad crossing to be brought to a full stop.   If you believe from the evidence that D. A. York, the son of plaintiff, was struck by an engine in charge of the servants and employes of defendant while such engine was approaching the crossing of another railroad, and that at the time of such striking said D. A. York was at or near such crossing and between defendant's engine and such crossing, and if you further believe from the evidence that the engineer in charge of such engine made no effort to stop for such crossing, the defendant would be liable for all damages sustained by plaintiff by reasons of such neglect, unless resulting from the negligence of D. A. York, if any, notwithstanding said D. A. York was upon the track of defendant at the time he was struck; provided, however, you believe from the evidence that said D. A. York would have escaped injury if such stop had been made for such crossing as required by law.

"2.    It is the duty of an engineer in charge of a locomotive engine to keep a lookout ahead of his engine; and if you believe from the evidence that the person in charge of the engine which struck D. A. York could by keeping such lookout have seen said D. A. York, and made no effort to stop the engine, and gave no signal of warning for said York to get off the track, then such failure would be such reckless and wanton disregard of human life as would render defendant liable for whatever damages from such failure and neglect, unless caused by the neglect of D. A. York, if any."

The first paragraph of the above charge is not applicable to the facts of the case.   The second is objectionable.   If York was seen, and the injury could have been avoided after he was seen, then this part of the charge might have been given.

But there was no evidence that the engineer saw York in time to have avoided the injury.

In this connection the instruction requested by the defendant was as follows:   "The statute requiring railroad companies to have their trains stopped before reaching the crossing of another railroad and to blow a whistle or ring a bell is intended to prevent collision between trains of the two intersecting roads and not as a warning to individuals walking upon the track of a railroad; and if as charged in plaintiff's petition you believe from the evidence that the engineer on defendant's road failed to ring the bell or blow the whistle or neglected any other requirement of the statute, and D. A. York, the party alleged to have been injured, could have seen the approaching engine, had he looked in time, to have avoided collision, but neglected to look or shut off his vision by his voluntary act in pulling his hat over his eyes, and the collision took place and he was injured, he was guilty of such contributory negligence as

would exempt defendant from liability, and you will find for defendant."

The statute does not require the whistle to be blown or the bell to be rung when a locomotive approaches a place where two lines of railroad cross each other. This is required to be done when it is within at least eighty rods of a place where the railroad crosses a public road or street. Rev. Stats., art. 4232 (Sayles). In approaching a place where two lines of railroad cross each other the engine is only required to be "brought to a full stop." Consequently there was no error in refusing the special instruction asked by appellant.

The assignment that the verdict is contrary to the evidence because it was shown that plaintiff's son was but slightly injured and his capacity for rendering services to plaintiff but little impaired can not be sustained. Upon this point the testimony was conflicting, the weight of it being in favor of the appellant. But we can not say that there was not sufficient evidence to support the verdict in this respect.

For the errors mentioned we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 18, 1889.