### S. W. SLAYDEN & COMPANY v. M. PALMO.

Decided January 13, 1909.

**1.—Conditional Lease—Sale of Land.**

A contract releasing P. from liability on previous transactions was conditioned on his making sale of a certain farm to R. The farm was sold under a trust deed to satisfy an incumbrance, and being bought by S. was sold by him to R. In the absence of evidence that such sale was made at the instance of P. for the purpose of carrying out his contract with R. or that P. adopted and ratified such sale to R. through the trustee and S., no release of his liability was effected by such transactions.

**2.—Contract—Partnership.**

A contract purporting to be by a partnership and to be signed by a member of the firm, providing for a conveyance of land to a member not signing it or to such person as he should direct, for a consideration to be secured by vendor's lien notes or his personal note, could not be construed as a mere proposition or option to be submitted to and approved by him before it became binding.

**3.—Agency—Ratification.**

Under a contract by which land was to be conveyed to S. or such person

as he should direct, the designation of the grantee could be made by S. by an agent; but the ratification of such contract so as to bind S. who had not signed it, if made by an agent, must be by one having specific authority to ratify.

### 4.—Partnership—Contract—Conveyance of Land.

A contract in the name of a partnership and binding them to convey land was ineffective as to partners not signing it, where the business of the firm was discounting commercial paper and loaning money, but not the buying or selling of land.

### 5.—Same.

A contract by one partner in the name of the firm by which it was released from no existing obligation, but assumed others, and which involved the purchase of land and conveyance of land by the firm, was not binding upon partners not signing or personally ratifying it.

### 6.—Evidence—Pleading in Another Suit.

In proof of the fact that a certain person was a member of a defendant partnership, the pleadings in a suit against such firm by a third party, charging him as a member, and the answer, containing a general denial but no sworn plea denying the partnership as alleged, were not admissible. The rule taking such partnership as admitted unless denied by verified plea applied only for the purpose of that case.

### 7.—Evidence—Irrelevant Transaction.

Proof that defendant had wrongfully converted property in a transaction not in issue in the case, of allegations in actions by other parties charging defendant with wrong, and of transactions with third parties, held immaterial and prejudicial.

### 8.—Measure of Damages—Charge.

Instructions as to measure of damages for breach of contract held erroneous.

### 9.—Damages—Verdict.

A verdict which finds damages at the rate of $5 per acre for failure to convey land, is insufficient without specifying its acreage. The court cannot look to the evidence, though undisputed, to complete the verdict.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Clark & Clark, D. C. Bolinger, W. B. Carrington* and *Eugene Williams,* for appellants.—As the purchase of land and the settlement of S. W. Slayden's shortage claims were not within the scope or apparent scope of the partnership business, the court should have given the requested charge and instructed the jury to find for appellants. Faires v. Ross, 18 S. W., 418; Brown v. Watson, 72 Texas, 216; Cushing v. Smith, 43 Texas, 261; Wallis v. Wood, 7 S. W., 854; Grabenheimer v. Rindskoff, 64 Texas, 49; Burrows v. Grover, 41 S. W., 822; Beatty v. Bulger, 28 Texas Civ. App., 117.

While T. B. Slayden, if a member of the partnership, would have had the right to bind the partnership within the scope of the business of banking and making mortgage loans and in protecting the partnership against the balance due on the Johnson farm mortgage if the partnership had assumed this balance, by taking a conveyance of the farm in full or part satisfaction of such balance, he had not the right to create an independent primary liability to pay such balance.

Lee v. Hamilton, 12 Texas, 418-419; Faires v. Ross, 18 S. W., 418; Beatty v. Bulger, 28 Texas Civ. App., 117; Randall v. Meredith, 76 Texas, 682; 22 Cyc., 148, 157.

Second proposition, thirty-ninth assignment.—The measure of Palmo's damage was not the value of the vendor lien notes, or Slayden's individual note, but the difference between the price to be paid Palmo if the paper of November 23, 1897, was binding upon appellants, which is not admitted but denied, and the value of the property Palmo therein obligated himself to deliver thereunder.

Statement.—The 612 acres is shown by the testimony to have been of the value of $15,000 November 23, 1897; six of the mules were of the value of $600; there was other personal property to be delivered by Palmo under the contract, reasonably of the value of $1,000, aggregating over $16,600. The purchase price was the estimated balance of $9,000 due on the mortgage, $6,000 vendor lien notes or Slayden's note, and the fifty acres of Rockport property, valued by the jury at $250, aggregating $15,250. The court charged the jury, if they found for Palmo, to return a verdict for $6,000 and the value of the Rockport fifty acres of land. Monroe v. South, 64 S. W., 1014; Kempner v. Heidenheimer, 65 Texas, 587.

*Richard I. Munroe* and *J. R. Downs,* for appellee.—There were facts in evidence which support the finding that the contract was within the scope of the partnership business, not only on the ground that the firm was bound on the $23,500 mortgage, but also on the ground that it was bound on S. W. Slayden's warranty of title, and that the whole transaction with Palmo was a partnership matter within the scope of its business. All circumstances of the acquisition of land (or the making of a debt) must be looked to to determine whether it is a partnership debt or property. Williams v. Myer, 64 S. W., 68-69; Schneider v. Sansom, 62 Texas, 202; Johnson v. Robinson, 68 Texas, 402.

The contract being within the scope of the business, Bailey Slayden, though not a partner inter se, was authorized to bind the firm, under the circumstances shown by the evidence. Slayden v. Palmo, 90 S. W., 908, 100 Texas, 13.

As a question of law it is within the scope of every partnership business to pay its debts. The court's charge does limit the implied authority of a partner to pay its debts as narrowly as the law requires. Schneider v. Sansom, 62 Texas, 202.

First counter-proposition under the thirty-ninth assignment.— Plaintiff did not sue for the breach of a contract of sale, but to enforce the contract sued upon, which was an agreement by defendants to pay plaintiff $6,000 in vendor's lien notes.

KEY, ASSOCIATE JUSTICE.—This case has been on appeal once before, and will be found reported in 90 S. W., 908 and 100 Texas, 13. M. Palmo instituted the suit against S. W. and T. B. Slayden and Ozias Bailey, seeking to recover for the breach of a written contract. T. B. Slayden died, leaving S. W. Slayden and Ozias Bailey as the only defendants. The contract sued on reads as follows:

"S. W. Slayden & Co., composed of S. W. Slayden, O. Bailey and T. B. Slayden, Waco, Texas, November 23, 1897. This contract shows that M. Palmo agrees to deed the Brazos Plantation farm to S. W. Slayden, or to whom S. W. Slayden may direct, in consideration of $6000 in vendor lien notes, to be approved by Mi. Palmo or the note of S. W. Slayden for said amount, the purchaser of said Brazos Plantation farm assuming the mortgage on said farm, on which is a balance due of about $9000. With the farm is included all stock except one pair of mares, and all farm implements, wagons and vehicles, except one buggy and cotton seed sufficient to plant the farm next year, and all corn and hay, household and kitchen furniture is also excepted, as well as the cotton now on the farm. In addition to the $9000 in notes the said Palmo is to be released from payment his account with S. W. Slayden & Co."

(Signed) Mi. PALMO,<br>S. W. SLAYDEN & Co.,<br>Per T. B. SLAYDEN.

"It is also understood that Palmo is to have the fifty acres of land in Rockport, once owned by him."

The plaintiff charged in his petition that the three original defendants were partners at the time the contract was made; that he had performed his part of the contract by executing a deed at the instance of the defendants to one John Baade, conveying to him the plaintiff's equity in the tract of land described in the contract as the Brazos Plantation farm. It was also alleged that the defendants had breached the contract by refusing to deliver to the plaintiff $6000 worth of vendor's lien notes, or the note of S. W. Slayden for that amount, and had failed to convey or cause to be conveyed to him the fifty acres of land in Rockport, referred to in the contract, and alleged to be of the value of $2000.

The petition also contained averments, whereby it was sought to recover from the defendants on account of an alleged conversion of twenty-five bales of cotton, but the court sustained a special exception to that branch of the plaintiff's case, and that ruling is not complained of in this court.

The answer of the defendants embraced a general demurrer, a special exception, a general denial and a voluminous special plea, the particulars of which need not be here stated further than to say that it included a specific denial of the plaintiff's charge that T. B. Slayden was a member of the firm of S. W. Slayden & Co. That plea was duly verified as required by statute. The plaintiff filed a supplemental petition and, among other matters, alleged that if T. B. Slayden was not, in fact, a member of the firm of S. W. Slayden & Co., that the latter had held him out as such in such manner as to authorize the plaintiff to deal with him as a member of the firm.

The last trial was before the court and a jury, and resulted in a verdict, which reads as follows: "We, the jury, find for plaintiff the sum of $6000 and the Rockport land at $5 per acre with six percent interest per annum from November 23, 1897, on both amounts up to present date. (Signed) J. Ivey McClain, Foreman." After receiv-

ing the verdict the court rendered judgment for the plaintiff against the firm of S. W. Slayden & Co. and against S. W. Slayden and O. Bailey individually for the sum of $9833.33, and the defendants have appealed the case to this court and presented it upon forty-one assignments of error in a brief containing 214 printed pages.

The case has been given careful consideration, and the conclusion reached that the judgment must be reversed. It is not necessary, nor shall we attempt, to consider in detail the various assignments of error, and it is sufficient to say that, with one exception hereafter noted, the errors pointed out are sufficiently presented in appellant's brief.

In 1894 the plaintiff Palmo owned and was running what was known as the Hotel Palmo in the city of Waco, and fifty acres of land in Rockport, Texas. He had borrowed money from and was indebted to the State Central Bank, of which S. W. Slayden was president and W. H. Lastinger cashier. This indebtedness ran up to about $19,000. S. W. Slayden had formerly owned a plantation on the Brazos River, which he sold to one Sam Johnson. Johnson mortgaged the farm to the State Central Bank to secure an indebtedness of $23,000, and thereafter conveyed the farm back to S. W. Slayden, with the debt and mortgage referred to standing against it. That debt and mortgage was transferred by the bank to another bank. In September, 1894, S. W. Slayden and Palmo made a trade whereby the Brazos Plantation or farm referred to was exchanged for the Palmo Hotel, Palmo assuming the payment of the $23,500 mortgage on the farm and Slayden assuming the payment of the $19,000 owing by Palmo to the bank. Palmo took possession of the farm and operated it for two or three years. He also sold a portion of it and applied the proceeds on the mortgage. The State Central Bank was a private corporation, and its capital stock was owned by S. W. Slayden ninety-six shares, O. Bailey twelve shares, W. H. Lastinger one share and J. L. Slayden one share. On March 11, 1895, that corporation ceased to do business, and conveyed all of its assets to S. W. Slayden, in consideration of his assuming the payment of its debts. At about the same time the firm of S. W. Slayden & Co. was organized, and consisted of S. W. Slayden and O. Bailey. However, there was testimony tending to show that T. B. Slayden had been held out and represented to be a member of the firm in such manner as to bind the firm by acts of his within the scope of the partnership business. The undisputed testimony shows that the partnership of S. W. Slayden & Co. was formed for the purpose, and was engaged in the business of discounting paper and loaning money. Such loans and discounts were generally made upon real estate security. The firm was not engaged in the business of buying and selling, and did not in fact buy or sell real estate. There was also evidence sufficient to show that the firm of S. W. Slayden & Co. was bound as guarantor or surety for the debt against the Brazos farm. It was also shown that at the time the contract sued on was made Palmo was indebted to S. W. Slayden & Co. in about the sum of $800. There was proof showing that prior to making the contract here involved Palmo set up a claim for shortage in the Brazos farm,

and that he had attempted to secure from S. W. Slayden compensation for the alleged shortage. There was proof showing that in the former transactions between Palmo and S. W. Slayden, the former had conveyed to the latter fifty acres of land in or adjacent to Rockport, Texas, which was the only land that Palmo had ever owned at that place; and there was proof supporting the finding of the jury that the land referred to was worth $5 an acre. Many other facts were proved, some of which may be referred to hereafter.

Before discussing the points upon which the case will be reversed, it is deemed proper to notice some of the contentions on behalf of appellants that are not considered tenable. The contract of June 18, 1898, pleaded and relied on by appellants as a relinquishment of all liability to appellee up to that date, was conditional upon Palmo's making sale of the farm to H. H. Rowland. Palmo did not consummate the sale. The farm was afterwards sold to Rowland, not by Palmo, but by the trustee foreclosing the mortgage lien, and selling the farm to S. W. Slayden, who then sold to Rowland. Therefore unless it can be shown that the sale referred to was made at the instance of Palmo for the purpose of carrying out his contract with Rowland, or that subsequent thereto he ratified and adopted the act of the trustee and S. W. Slayden in making the sale to Rowland, we do not think the contract of June 18, 1898, is available as a defense to the cause of action asserted in this case. And if the sale was made at Palmo's instance, or if he ratified or adopted it, then the contract referred to became operative and constituted a good defense, regardless of the reasons urged by Palmo against its validity.

In view of the ruling just made, the questions presented in reference to the Presidio County land, and Palmo's testimony concerning the same, become immaterial.

We also overrule appellants' contention that the contract sued on shows upon its face that it was a mere proposition or option to be submitted to S. W. Slayden in person and by him accepted, before it could become binding. It does not so read, and we are not at liberty to so construe it; nor does it require, as contended on behalf of appellants, that S. W. Slayden should personally direct to whom the farm should be conveyed. It requires the farm to be conveyed "to S. W. Slayden or to whom S. W. Slayden may direct," but we think that he could act by agent in designating a grantee. We do not hold, however, that ratification could be done by an agent, unless he had specific authority to ratify. The defendants pleaded that the contract was signed upon an understanding that it was to be submitted to S. W. Slayden and not be binding unless approved by him; and the court properly submitted that question to the jury.

As to the points made in appellants' brief as to whether T. B. Slayden was a partner, or so held out as to bind the firm, as said before, there was testimony authorizing a finding that he was so held out. But such finding did not authorize a verdict against the defendants, for reasons which will now be stated. It must be borne in mind that T. B. Slayden is no longer a party to the suit, and the question of his liability or the liability of his estate is not under consideration. At the trial now under review the defendants were

S. W. Slayden and O. Bailey, and the question of their liability, jointly or severally, was the matter to be determined. The most favorable construction that can be placed upon the contract sued on in behalf of Palmo and as against S. W. Slayden & Co. is that it obligates the latter to see to it that Palmo sold his farm, either to S. W. Slayden, or some other designated vendee, and received in payment therefor S. W. Slayden's note or vendor lien notes to be approved by Palmo of the value of $6000; that the fifty acres of land in Rockport, formerly owned by him, should be conveyed back to him and that he should be released from the payment of his account owing to S. W. Slayden & Co. The contract was not signed by S. W. Slayden or O. Bailey individually, but by S. W. Slayden & Co., per T. B. Slayden. It shows on its face that it was made with the firm, and not with any individual member of the firm, except T. B. Slayden, who is no longer a party to the suit. Was such a contract within the scope of the partnership business? Or stating the question more accurately, was that portion of the contract which obligated the firm to see to it that the Rockport land was conveyed to plaintiff and that he receive $6000 worth of vendor's lien notes, or the note of S. W. Slayden for that sum, within the apparent scope of the partnership business? We think that question must be answered in the negative. The firm of S. W. Slayden & Co. was organized for the purpose, and was engaged in the business of discounting paper and loaning money; and it was not within the apparent scope of the authority vested by law in any member of that firm to bind the partnership by a contract for the purchase or sale of real estate, unless some special reason existed which would take the case out of the general rule. (Faires v. Ross, 18 S. W., 418; Beaty v. Bulger, 28 Texas Civ. App., 117.) In the latter case it is said: "That a partnership is not liable upon an individual undertaking of one of the members, not shown to be in furtherance of the purposes of the partnership or undertaken for its benefit, is an elementary proposition too plain to require the citation of authorities." The contract in question had no connection with any business of the partnership of S. W. Slayden & Co., except that part which stipulates that Palmo is to be released from the payment of his account with S. W. Slayden & Company.

While it was held in Lee v. Hamilton, 12 Texas, 418, that a partner has no implied authority to accept anything other than money in payment of a debt owing to the firm, still if it be conceded that T. B. Slayden had authority to accept real estate or other property in payment of Palmo's indebtedness to the firm, it can not be successfully contended that he had authority to bind the firm by an obligation to see that a particular tract of land was conveyed to Palmo, and that he should receive $6000 in promissory notes. But it is contended on behalf of appellee that as the proof warranted a finding that T. B. Slayden was held out and treated as a partner, he, as such partner, had the power to bind the partnership, because there was proof to the effect that the partnership was obligated for the payment of the mortgage against the Brazos farm. In other words, that under such circumstances any member of the firm could enter

into a contract on behalf of the firm for the purchase of the farm in question, and obligate the firm as the contract under consideration attempts to do. We can not sanction that contention. While it may be conceded that each partner has implied authority to take all steps necessary for the protection of the firm, we do not believe that this case comes within such rule. The holder of the mortgage was not a party to the contract, and therefore S. W. Slayden & Co. were not released from their obligation as surety for the debt against the farm. The only result would have been to transfer Palmo's equity of redemption to S. W. Slayden, or such person as he might direct. It is not a contract by the terms of which the firm was to acquire any property, or be released from any obligation; while, on the other hand, if binding upon the firm it obligated it for more than $6000. Hence, it is apparent that the contract was not necessary for, and could not result in, the protection of the firm of S. W. Slayden & Co. Furthermore, it included in the sale by Palmo certain personal property that was not covered by the mortgage against the farm, and the consideration to be paid to Palmo was, in part, for such personal property. The court charged the jury as follows:

"10. A partnership conducting a banking or loan business would have the right to protect themselves against any note upon which the partnership was responsible as endorser or by reason of having assumed to pay the same, in any manner deemed best by any member of the partnership, provided that no new or additional obligation be created against the partnership; so if you believe that S. W. Slayden & Co. was obligated for the balance due on the Johnson note, either by endorsement or by assuming to pay the same, a member of the partnership could accept the land against which a lien was held to secure said debt to protect the partnership against the endorsement or the obligation to pay the defendants, and in payment and settlement of the indebtedness due by plaintiff to said defendant company, and such a transaction would be within the general scope of the partnership business."

The first part of this charge may have stated the law correctly, but the latter part tended to contradict the former, and was, to say the least, misleading. In concluding this branch of the case our ruling is that the contract was not within the apparent scope of the partnership business, and S. W. Slayden and O. Bailey are not bound thereby, unless it shall be made to appear that they have ratified or adopted the same.

The trial court permitted the plaintiff to introduce in evidence a petition filed by the National Bank of Commerce against S. W. Slayden & Co. in one of the federal courts of this State, and the answer filed by S. W. Slayden & Co. to that petition. The petition charged that S. W. Slayden & Co. was a partnership, consisting of S. W. Slayden, O. Bailey and T. B. Slayden; and while the answer of the defendants embraced a general denial, the partnership was not denied under oath. The evidence referred to was offered and admitted upon the theory that it tended to show an admission by S. W. Slayden and O. Bailey that T. B. Slayden was a member of the firm of S. W. Slayden & Co. That testimony was objected to by the

defendants, and we think the objection should have been sustained. For the purposes of that case the answer filed in that court may have been equivalent to an admission of the partnership; but if so, it was merely on account of the existence of a statute or some other rule of law which requires that when a plaintiff charges that the defendants are partners the latter must, in order to present an issue in that regard, deny such charge under oath. Such a statute or rule of law has no application except as a rule of procedure in the case in which the answer is filed. Leaving out of consideration the rule referred to, as should have been done when the evidence was offered, then the documents referred to merely showed that somebody charged that T. B. Slayden was a member of the firm of S. W. Slayden & Co., and the latter denied the charge. Such evidence constituted no admission, and did not tend to prove any fact material to this case. Hence, we sustain the thirty-fourth and thirty-fifth assignments of error.

We also hold that error was committed, as pointed out in the thirty-sixth assignment, in permitting Palmo to testify that in 1894, when he exchanged the hotel for the plantation, there were about 100 bales of cotton on the plantation, the proceeds of which were appropriated by Slayden. That testimony was immaterial and calculated to prejudice appellants.

The thirty-seventh assignment complains of the action of the court in permitting the plaintiff to introduce in evidence a petition filed by one Ellison in the County Court against the plaintiff Palmo and S. W. Slayden. We fail to see the materiality of that testimony and think the objection urged against it should have been sustained. The same may be said in reference to the testimony complained of in the thirty-eighth assignment, wherein the plaintiff was permitted to testify that he had made negotiations through J. E. Horne, a real estate agent, to exchange the Brazos plantation for Bandera County land, and that the loan encumbering the plantation had prevented him from making the trade. That testimony was immaterial and may have been harmful to appellants.

The thirty-ninth assignment complains of the charge of the court in reference to the measure of damages, wherein the jury were instructed, if they found for the plaintiff, to allow him the sum of $6000 and the value of the fifty acres of Rockport land, with six percent interest per annum from November 23, 1897. We do not agree with appellants in their contention as to the measure of damages, but there was testimony tending to show that some of the personal property to go with the farm was not delivered by Palmo, and, if such was the case, the value of such personal property should have been deducted from the $6000.

There is one other matter, though not assigned as error, to which we deem it proper to direct the attention of the trial court. The verdict does not specifically find the total amount of the value of the Rockport land, nor does it furnish the data by which such total amount can be ascertained. It merely finds for the plaintiff for the Rockport land at $5 per acre. It has been repeatedly held that when a defendant has interposed a general denial, and there is a jury trial,

the verdict must find all the facts necessary to support a judgment; and that while, in construing a verdict, the pleadings and charge of the court may be looked to, the court can not look to the testimony, no matter how clear and uncontradicted it may be, in order to ascertain facts upon which to base a judgment. (Dodd v. Gaines, 82 Texas, 429, and cases there cited.) We think the verdict should have stated the total value of the land, or given the number of acres, as well as the value per acre. Of course, the verdict could have been general and covered both items in one sum, but that course was not pursued.

On account of the errors hereinbefore pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*