CLOSNER & SPRAGUE et al. v. ACKER et al. (No. 5904.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 19, 1917. On Motion for Rehearing Jan. 23, 1918.)

1. SET-OFF AND COUNTERCLAIM ⬤══29(1) — CLAIMS WITH SUBJECT-MATTER OF THE ACTION.

In a suit by an assignee of part of a series of notes secured by vendors' lien against the maker, the assignors, and a subsequent purchaser, who assumed their payment, the subsequent purchaser filed a cross-bill against the assignors and an irrigation company organized and managed by them, for fraud inducing the sale of the land to him, and for the failure of the irrigation company to furnish water pursuant to a water contract acquired by him as part of his purchase. Held that, as the cause of action by plaintiff was founded on the deed from the assignors to the maker of the notes, which also created a lien for the rest of the series of notes retained by the assignors, and as plaintiff made the deed from the maker to the subsequent purchaser and its obligation part of his cause of action, the cross-bill was maintainable under Vernon's Sayles' Ann. Civ. St. 1914, art. 1330, providing that nothing in the preceding article

shall prohibit defendant from pleading any set-off or any counterclaim founded on a cause of action arising out of or incident to or connected with plaintiff's cause of action, since, in order to render a final decree, it was necessary to determine whether any surplus obtained from a sale of the property should be paid to the subsequent purchaser or to the assignors to apply on the notes retained by them.

2. VENDOR AND PURCHASER ☞3(3)—NATURE OF TRANSACTION—SALE OR AGENCY.

Owners of land executed an option to R., whereby they bound themselves to deed the land to certain persons, as directed by R., in consideration of a certain price, to be paid as therein specified. When agents employed by R. had procured a purchaser for certain land, the owners deeded the land to one of the designated persons, who paid therefor partly in cash and partly by notes secured by a vendor's lien, and thereupon conveyed to the purchaser so obtained. Held, that the relation between the owner and R. was that of vendor and purchaser, and not that of principal and agent, and such owners were not liable for misrepresentations made by its vendee or by the agents employed by R.

3. FRAUD ☞30—PERSONS LIABLE—NOTICE.

Where the purchaser accepted a deed from the vendee designated by R., and expressly assumed the notes executed by such vendee, and made additional notes to the vendee, he had notice that such vendee was his vendor, and that he was not the agent of such owners.

4. FRAUD ☞28—ACTS CONSTITUTING.

There was nothing fraudulent in the owners' giving such option, as they had a legal right to limit their liability to their own statements, and to save themselves from liability for the misrepresentations of others, provided such limitation was not concealed from the purchaser.

5. PRINCIPAL AND AGENT ☞22(1) — EVIDENCE—DECLARATIONS OF AGENT.

The statement of a person that he was a sales agent for defendants, made in their absence, was not admissible to prove agency.

6. EXCEPTIONS, BILL OF ☞31—NECESSITY OF APPROVAL.

An assignment, which predicated error upon a state of facts shown by a bill of exceptions not approved by the trial court, could not be considered.

7. JUDGMENT ☞256(1) — CONFORMITY TO VERDICT.

In a suit to foreclose a vendor's lien, in which one of the defendants filed a cross-bill for fraud inducing the purchase of the land and for the failure of an irrigation company to furnish water for irrigation, where the jury found for such defendant on the issue as to the failure to furnish water, the court erred in ignoring the verdict and rendering judgment against him on that cause of action.

8. ACTION ☞45(1) — JOINDER OF CAUSES — REPUGNANT CAUSES OF ACTION.

Causes of action by a vendee for fraud in representing that the land was subject to irrigation, and for failure to furnish water for irrigation as agreed, were repugnant and contradictory, and could only be alleged properly in the alternative, as it would be a double recovery to recover full compensation because the land was not subject to irrigation, and in addition damages for failure to furnish water.

On Motion for Rehearing.

9. APPEAL AND ERROR ☞1173(2)—REVERSAL AS TO PARTIES NOT APPEALING.

In an action by the assignee of part of a series of notes secured by a vendor's lien against the maker, the assignors, and a subsequent purchaser, who assumed their payment, the subsequent purchaser filed a cross-action against the assignors for fraud, and an insurance company, which had acquired the rest of the notes of the series after maturity as collateral security, was impleaded. Judgment was rendered for the subsequent purchaser against the assignors, the amount due on the notes held by the insurance company being deducted from the amount of the recovery, and such notes were ordered canceled. The assignors appealed, but there was no appeal by the insurance company. Held, that the court had jurisdiction to reverse the judgment as against the insurance company, on reversing the judgment against the assignors, as the appeal brought up the entire case, and brought all the parties before the court in such a way as to give jurisdiction to render any judgment to which the appellants might show themselves entitled.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by Max Acker against Closner & Sprague and others. John F. Mudge and wife filed a cross-action, in which the American National Insurance Company intervened. Judgments for plaintiff against Mudge and wife, and for the latter on their cross-complaint against Closner & Sprague and another. Closner & Sprague, John F. Mudge and wife, and another appeal. Affirmed in part, and reversed and remanded in part.

Denman, Franklin & McGown, of San Antonio, and Williams & Neethe, of Galveston, for appellants. George P. Brown, of Laredo, and Don A. Bliss, of San Antonio, for appellees.

SWEARINGEN, J. Max Acker filed this suit to recover the amount of five notes and to foreclose a vendor's lien on 40 acres of land designated sufficiently for our purpose as lot 10, block 238. The parties made defendant by plaintiff were Ray E. Jackson, the maker of the notes, John F. Mudge, who assumed the payment of the notes, which assumption was expressed in the deed to Mudge, John Closner and W. F. Sprague, indorsers, and the following, who had or claimed some interest in the land: Lucy E. Mudge, wife of John F. Mudge, George C. Wright, W. W. Ryan, and the Valley Reservoir & Canal Company. Ray E. Jackson, W. W. Ryan, and George C. Wright, alleged to reside in the state of Missouri, made no appearance.

John F. Mudge and wife answered that Closner & Sprague were the real owners of the notes held for them by the plaintiff, and by a cross-action sought to set off against the notes damages for deceit and fraud inflicted upon them by the misrepresentations of representatives of the Jackson-Vreeland Land Company, selling agents of Closner & Sprague. In the same cross-action the Mudges sought to offset damages caused them by the failure of the Valley Reservoir & Canal Company to furnish water according to the terms of a contract for irrigating the land purchased. The damages claimed on

both counts far exceeded the amount of the notes, and judgment was asked for the excess.

The American National Insurance Company, urged to be made party defendant by Closner & Sprague, impleaded by the cross-action of John F. Mudge, intervened as the owner of five notes, numbered 6, 7, 8, 9, and 10, of the same series as the five notes, numbered 1, 2, 3, 4, and 5, sued upon by plaintiff. The intervener's notes were made by Jackson, indorsed by Closner & Sprague, and secured by vendor's lien as were plaintiff's five, but expressly made subordinate to the five notes owned by plaintiff, by an agreement when the plaintiff acquired his five. No personal judgment was sought by the intervener by reason of the assumption of the notes by Mudge.

Closner & Sprague and the Valley Reservoir & Canal Company excepted to the cross-action for misjoinder of causes of action, and denied the allegation of agency, and denied all the allegations of the cross-action, except that the Valley Reservoir & Canal Company admitted the execution of the contract by it to furnish water for irrigation, with the terms of which, it was alleged, the Mudges had failed to comply.

Special issues were submitted to a jury. Judgment was rendered by the court, after overruling the exception and plea of misjoinder, in favor of the plaintiff for the amount of his notes, together with attorney's fees, and foreclosing the lien as prayed for by plaintiff, and the court rendered judgment in favor of Mudge on his cross-action against the appellants for the sum of $14,055.60, being the balance, as stated in the decree, that Mudge was entitled to recover after deducting the sum of $1,593.07, the amount of the notes sued on by the intervener, the American National Insurance Company. It appeared from the undisputed evidence that the intervener acquired these notes as collateral after their maturity. Judgment was against the Mudges on their cross-action for failure to furnish water. There is no appeal by any of the parties from the judgment in favor of Acker. This appeal was taken by John Closner, Wm. F. Sprague, and the Valley Reservoir & Canal Company from the judgment against them in favor of John F. and Lucy E. Mudge on their cross-action for deceit. John F. and Lucy E. Mudge cross-assigned error, complaining of the judgment against them on their claim for damages for failure to furnish water to irrigate.

Because of the assignment presenting the plea of misjoinder, it will be necessary to say that plaintiff, in stating his cause of action, pleaded the deed from Closner & Sprague to Ray Jackson, the maker of plaintiff's notes, and also set out the assumption to pay same expressed by Mudge in the deed from Jackson to him. One of the two causes of action alleged in the cross-action is:

That Closner & Sprague owned thousands of acres of land in the semi-arid portion of Southwest Texas, and conceived the scheme of subdividing it into lots and blocks and selling it at high prices as irrigated lands, and in furtherance of that scheme organized the corporation known as the Valley Reservoir & Canal Company for the purpose of furnishing water to irrigate their lands. They were the owners of all the stock and were the absolute managers of the said corporation. That Closner & Sprague and the Valley Reservoir & Canal Company employed the Jackson-Vreeland Land Company, a corporation, as their agent to find purchasers for these lands. That the said agent, through its representatives, induced John F. and Lucy E. Mudge to buy the 40 acres of land described by plaintiff in his first amended petition as lot 10, block 238, and in addition 40 acres in lot 15, block 238, and also 40 acres out of the E. ½ of lot 2 and the W. ½ of lot 3 in block 277. That John F. and Lucy E. Mudge were induced to purchase the above-described land by the following representations, made to them by the representatives of the Jackson-Vreeland Land Company, the agent of appellants:

"That said land had what is called a water right, entitling it to be irrigated by waters from the canal of the said Valley Reservoir & Canal Company, and that the said Valley Reservoir & Canal Company then owned and operated a pumping plant and a canal, with laterals, which furnished abundance of water to irrigate all the lands including the land hereinbefore mentioned [the three tracts of 40 acres each purchased by Mudge], and * * * that the Valley Reservoir & Canal Company had abundant facilities to irrigate said land, and were ready right at that time to furnish the water necessary to irrigate the land."

That these representations were untrue. That, had they been true, the land would have been of the value of $185 per acre, the amount paid and promised by Mudge; but, being untrue, the value of the land was only $10 an acre. That because of the deceit and fraud John F. and Lucy E. Mudge were damaged in the sum of $21,000, the difference between the value of the land as it actually was and the amount paid and obligated to be paid by Mudge for the 40 acres involved in plaintiff's suit, as well as the other 40 acres purchased from Closner & Sprague, and also the 40 acres purchased from the Valley Reservoir & Canal Company.

In addition to the foregoing alleged cause of action John F. and Lucy E. Mudge alleged that a certain water contract had been acquired by them as part of this purchase, which entitled them upon certain conditions to receive water from the Valley Reservoir & Canal Company, upon demand, in sufficient quantities to enable them to produce profitable crops upon the 120 acres of land purchased; that the water was not furnished in 1914 and 1915, causing itemized and valued

damages to John F. Mudge; and it was further alleged in the cross-action:

"That though the plaintiff herein [Max Acker] may be the holder of said notes, yet he holds the same for the benefit of the said Closner & Sprague, who are the real owners thereof."

From the evidence, we find: That John Closner and W. F. Sprague owned thousands of acres of land, which they subdivided into lots and blocks to be sold as irrigable lands; that they organized, owned, and managed the Valley Reservoir & Canal Company, incorporated for the purpose of furnishing water from the Rio Grande river to irrigate the lands involved in this suit; that this corporation also owned one of the 40-acre tracts which was mentioned in the cross-action, but was not mentioned in the plaintiff's petition; that Closner & Sprague signed an option agreement by which they bound themselves to W. W. Ryan to execute a deed to either Ray Jackson or Merrill Jackson as directed by Ryan, for lands selected by Ryan, for which Closner & Sprague were to be paid $75 an acre, partly in cash, the remainder evidenced by notes made by the grantee in the deed, and secured by vendor's lien to be expressed in the deed; that Ryan employed the Jackson-Vreeland Land Company to advertise the lands and promote excursions of land buyers from Northern states to the lands; that John F. and Lucy E. Mudge were among the excursionists and were induced to buy the 120 acres of land described in their cross-action; that they were told by the representatives of the Jackson-Vreeland Land Company that the 120 acres of land would be furnished water in sufficient quantities to irrigate successfully as soon as they prepared the land for cultivation; that the facilities for furnishing water were ample at the time of the purchase; that the Mudges believed these statements and relying upon the truth of them bought the land; that the statements were not true; that water was never furnished, though Mudge prepared and planted his lands. The Valley Reservoir & Canal Company executed a water contract to Jackson, which was assigned by him to Mudge when Mudge purchased the land from Jackson. This contract bound the water company to furnish Mudge water for irrigating his lands upon certain conditions. The company failed to comply with its obligation to furnish water which failure caused Mudge to lose his crops.

During the trial it was admitted in open court that Max Acker had in good faith become the owner of his five notes before maturity for value and at the time of the trial was the bona fide owner of them. On October 28, 1913, upon Ryan's demand, Closner & Sprague and the Valley Reservoir & Canal Company executed and delivered deeds conveying the three tracts of land to Ray Jackson for $75 an acre one-fifth of which was paid in cash, the balance evidenced by notes made by Ray Jackson, the grantee in the deeds. On the same day, Ray Jackson conveyed the same lands to John F. Mudge for $185 an acre. This $185 an acre was paid partly in cash, partly by notes payable to Ryan, partly by deeding Mudge's home, and partly by the assumption by Mudge of the outstanding vendor's lien notes made by Ray Jackson payable to the order of Closner & Sprague.

[1] The first four assignments present the question of misjoinder, and all four must be overruled. The cause of action averred by plaintiff himself was founded upon the deed from Closner & Sprague to Jackson in which was evidenced the agreement creating plaintiff's notes and lien. This same contract also expressed the liability on and lien for the five notes not purchased by plaintiff, but retained by Closner & Sprague, and at the time of the trial subject to legal offsets against them. In order to render a final decree on plaintiff's petition it became necessary to determine to whom any surplus obtained from the sale of the property should be paid. If Mudge had no legal offset, the surplus should be applied to the satisfaction of the notes numbered 6, 7, 8, 9, and 10, which were secured by a vendor's lien, though inferior by agreement to the lien securing the notes numbered 1, 2, 3, 4, and 5. If Mudge established a legal set-off in this suit against Closner & Sprague, the surplus should be by the decree awarded to Mudge.

The relative rights of Mudge, Closner & Sprague, and the plaintiff, in the property and the proceeds of the sale thereof, all depended upon the terms of the deed that is the foundation of plaintiff's cause of action. It was the making of this contract, expressed in the deed, which Mudge averred was accomplished by the deceit and fraud of Closner & Sprague through their agents. Then, again, plaintiff also made a part of his petition the agreement of Mudge to assume the payment of plaintiff's five notes, which agreement was expressed in the deed from Jackson to Mudge. Thus plaintiff made that deed and all its obligations a part of his cause of action. Among these obligations was the promise of Mudge to assume the payment of all of the ten notes of the series made by Jackson, five of which belong to plaintiff and five to Closner & Sprague. This deed is specially attacked because of the alleged fraud and deceit of Closner & Sprague through agents. The substance of the cross-action as above stated is that the agreement was induced by false statements to Mudge by Closner & Sprague through their agent, the Jackson-Vreeland Company.

The cross-action averred was a part of, grew out of, and was connected with plaintiff's cause of action, and is specifically authorized by article 1330, Vernon's Sayles' Tex. Civ. St., to be joined in a suit like this. Mathonican v. Scott & Baldwin, 87 Tex. 396,

28 S. W. 1063; Harris v. Cain, 41 Tex. Civ. App. 139, 91 S. W. 866; U. S. Fidelity & Guarantee Company v. Fossati, 97 Tex. 497, 80 S. W. 74. The rule of law by which the question of misjoinder is determined has been applied to facts in the following additional cases: Holloway v. Blum, 60 Tex. 625; Burditt v. Glasscock, 25 Tex. Supp. 45; Hurlock v. Reinhardt, 41 Tex. 580; Eccles v. Hill, 13 Tex. 65; Thomas v. Chapman, 62 Tex. 197; Frey v. Railway, 86 Tex. 465, 25 S. W. 609; Coutlett v. U. S. Mort. Co., 60 S. W. 820; Johnson v. Davis, 7 Tex. 173; Clegg v. Varnell, 18 Tex. 294; Carla Land & Irr. Co. v. Dimmit Bank, 165 S. W. 899; Keel & Son v. Grain Co., 143 S. W. 238; Williams v. Robinson, 63 Tex. 576; Stewart v. Gordon, 65 Tex. 344; Love v. Keowne, 58 Tex. 191; Adams v. First Nat. Bank, 178 S. W. 996; Haberzettle v. Dearing, 80 S. W. 539; Kemendo v. Fruit Dispatch Co., 61 Tex. Civ. App. 631, 131 S. W. 73; Key v. Fouts, 44 Tex. Civ. App. 424, 99 S. W. 448; St. Louis, etc., v. Hengst, 36 Tex. Civ. App. 217, 81 S. W. 832; Gulf, etc., v. Browne, 27 Tex. Civ. App. 437, 66 S. W. 341; 2 Daniel on Neg. Ins. (6th Ed.) §§ 1422–1437.

The contentions raised by the first four assignments have been considered by us in detail; but we do not so discuss them, because it seems to us the general discussion above given requires that all be overruled.

[2] Appellant in the trial court consistently and persistently insisted that the relation between Closner & Sprague and the Valley Reservoir & Canal Company, on the one side, and Ray Jackson, on the other, was that of vendor and purchaser, and not a relation of principal and agent. Declarations of agency were admitted over timely objections. Excerpts from advertising literature published by the Jackson-Vreeland Company, referring to the lands as those of Closner & Sprague, and statements of Closner, years after the sale, to prove agency, were likewise admitted over objections. After the close of the testimony, numerous special instructions based upon this contention were requested and refused. The issue of agency submitted by the court was, in due form and time, objected to; likewise the instruction explaining same. The answer of the jury to the issue of agency and the decree in accord with the verdict on the issue of agency were all assailed. All these contentions are presented from various viewpoints for our review in appellants' assignments, numbered 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27. All can properly be disposed of by our conclusion that there was no evidence that the Jackson-Vreeland Land Company was the agent of the appellants, and therefore that company and its representatives had no power to fasten liability for deceit and fraud upon the appellants.

The fifth, sixth, and seventh assignments present the trial court's refusal to instruct a verdict in favor of Closner & Sprague and the Valley Reservoir & Canal Company against J. F. Mudge and wife on their cross-action. Appellants insist that the refusal was error, because there was no evidence that the Jackson-Vreeland Land Company was the agent of any or all of the three appellants. The allegation in the cross-action is that the Jackson-Vreeland Land Company was, by express agreement, made the exclusive agent for the sale of the lands involved in this suit; that, as agent, the land company made the false representation that induced the sale. It is further alleged in the cross-action that, for the purpose of avoiding liability for misrepresentations, the appellants concealed the agency agreement under the guise of an option agreement.

This allegation is an admission by the Mudges that the contract between Closner & Sprague, one party, and Ryan, the other party, was on its face an option contract, by the terms of which the relation of principal and agent does not appear to have been created, but, on the contrary, upon the face of the option contract, the relation between Closner & Sprague, on the one side, and W. W. Ryan, on the other, was that of vendor and purchaser. An examination of the option agreement proves the correctness of the admission, for the agreement binds Closner & Sprague to deed the land to Ray or Merrill Jackson, as directed by Ryan, in consideration of $75 an acre, one-fifth of which to be paid in cash on delivery of deed, and the balance to be secured to be paid by ten several notes executed by the grantee, either Ray or Merrill Jackson, and secured by vendor's lien on the land conveyed. This stipulation proves beyond question the relation was that of vendor and purchaser. One of the oldest and commonest rules of law is that an agent for effecting sales cannot be a purchaser. Briggs v. Boyd, 56 N. Y. 289; Porter v. Woodruff, 36 N. J. Eq. 174; Kerfoot v. Hyman, 52 Ill. 512; Jansen v. Williams, 36 Neb. 869, 55 N. W. 279, 20 L. R. A. 207; Robinson v. Easton, 93 Cal. 80, 28 Pac. 796, 27 Am. St. Rep. 167; Keene v. Demelman, 172 Mass. 17, 51 N. E. 188; Harney v. Burhans, 91 Wis. 348, 64 N. W. 1031; Chezum v. Kreighbaum, 4 Wash. 680, 30 Pac. 1098, 32 Pac. 109; Turnley v. Micheal, 15 S. W. 912; Allen v. Clopton Realty Co., 135 S. W. 242; Slayden v. Palmo, 53 Tex. Civ. App. 227, 117 S. W. 1054; Collier v. Robinson, 61 Tex. Civ. App. 164, 129 S. W. 389; Hammons v. Clwer, 59 Tex. Civ. App. 610, 127 S. W. 889; Hamburger v. Thomas, 118 S. W. 770; Newton v. Dickson, 53 Tex. Civ. App. 429, 116 S. W. 143; Cases on Agency by Wambaugh, 911. See note 4, pages 912, 913. Illustrative, see Mechem on Sales, § 49.

In all discussions of contracts, where the issue is whether they are sales contracts or merely agency contracts, one test is: Does the contract obligate one party to convey and the other party to pay? If so, the contract is

one of sale, and not agency. The instrument under consideration is not a sales contract, but an option binding Closner & Sprague to convey to Jackson, when demanded by Ryan, in consideration of payment by Jackson. The only distinction between the option and the sales contract relevant to this case is that Ryan could demand the deed or refuse to demand it. But, if he demanded it, the contract before us required Closner & Sprague to convey, and required Jackson to pay for, the land. There is no question that the agreement did not create the relation of agency, but, on the contrary, expressly negatived that relationship.

[3] The deed from Closner & Sprague to Ray Jackson conveyed the land to Jackson, possibly in trust for Ryan, but certainly passed the title out of Closner & Sprague and into Jackson. The execution of the ten notes created a valid obligation against Jackson. This deed and these ten notes do not evidence an agency relationship between Jackson and Closner & Sprague, but on the face unequivocally evidence the relation of vendor and purchaser. That Closner & Sprague were not selling to Mudge through an agent was clearly and unmistakably brought to the notice of Mudge before he acquired title and before he executed his notes for the purchase; for he accepted a deed executed by Ray Jackson, and expressly assumed the notes payable by Jackson to Closner & Sprague, and made additional notes payable to Ray Jackson. This is sufficient notice to him that Jackson was his vendor, and not Closner & Sprague.

The cross-action avers that this method of passing the title into Mudge was a subterfuge, for the purpose of enabling Closner & Sprague to avoid liability for false representations of the agents of the Jackson-Vreeland Company. We do not understand why it should be termed a subterfuge, since it was a plain transaction, clearly understood by Mudge before he bought. Mudge knew, from the deed and notes, that his vendor was Jackson, and willingly bought with that knowledge. Any contrary idea he may have inferred from other or previous oral statements was positively eliminated by the deed and notes. He knowingly accepted the deed, and executed the notes, and assumed Jackson's obligations to Closner & Sprague.

[4] The insinuation that there was some taint of fraud, because Closner & Sprague desired to avoid liability for misrepresentations by the Jackson-Vreeland Company and its agents, is not tenable. They had a legal right to limit their liability to their own statements, and to save themselves from liability for the misrepresentations of others, provided, of course, this limitation was not concealed from Mudge. When an indorser of a negotiable instrument writes the words "Without recourse" above his indorsement, his motive is to limit his liability on a note he sells and for which he receives a consideration. The motive is not fraudulent, but prudent. We fail to find in the statement of facts one particle of evidence to sustain the theory that the option contract, and the deed to Jackson, and the deed from Jackson to Mudge were a disguise to conceal the true relationship of agency.

[5] The statement of Jackson, that he was a sales agent for Closner & Sprague, made in their absence, is not admissible testimony to prove agency. Alamo Live Stock Commission Company v. Heimer, 192 S. W. 591; Coleman v. Colgate, 69 Tex. 88, 6 S. W. 553; Latham v. Pledger, 11 Tex. 445; Wright v. Doherty, 50 Tex. 42; Gulf, etc., Co. v. York, 74 Tex. 364, 12 S. W. 68; Guitar v. McGee, 139 S. W. 624. The recital in the literature that Closner & Sprague owned the land advertised was the exact truth. They did own it until they sold it to Jackson. The evidence proves beyond question and without conflict that Closner & Sprague were the vendors of Jackson, and Jackson was the vendor of Mudge. It proves that the Jackson-Vreeland Land Company was the selling agent for Ryan, and that Jackson was an agent of the Jackson-Vreeland Land Company. The misrepresentations of Jackson, or of the Jackson-Vreeland Land Company, could not give Mudge a cause of action against Closner & Sprague. Because there was no evidence that the Jackson-Vreeland Land Company was the agent of Closner & Sprague and the Valley Reservoir & Canal Company, the court should have instructed the jury to find for the appellants upon the issue of deceit by misrepresentation.

This also disposes of those assignments urging error because the verdict was contrary to the evidence.

Assignments 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27 are sustained.

[6] Appellants' assignment numbered 42 is not considered, because it predicates error upon a state of facts shown by a form of bill of exception, which the record shows was not approved by the trial court.

By cross-assignment the appellees, John F. and Lucy E. Mudge, assail the court's decree for the reason urged that the pleadings and evidence made the issue of damages for failure to furnish water as contracted for irrigating the lands belonging to the Mudges, the issue was properly submitted to the jury which answered in favor of the Mudges, and, notwithstanding the verdict, the judgment rendered was against this item of the cross-action.

[7, 8] We think this cross-assignment should be sustained. The court erred in ignoring the verdict of the jury. In view of another trial, it may be proper to say that the two causes of action averred by the cross-action are repugnant and contradictory, and could only be alleged properly in the alternative. A recovery on both would have been

a double recovery. To recover full compensation because the land was not subject to irrigation, and then in addition to recover an annual compensation for failure to furnish water, would be a most flagrant instance of double compensation. It may be the trial court was influenced by such an opinion, and therefore sought to prevent the injustice by that part of its decree complained of in this assignment.

We reverse that portion of the judgment against Closner & Sprague and the Valley Reservoir & Canal Company in favor of John F. Mudge and Lucy E. Mudge on their cause of action alleged in the cross-action for deceit and fraud, and reverse that portion of the judgment against John F. and Lucy E. Mudge upon their cross-action for failure to furnish water. That portion of the judgment which is against the intervener, the American National Insurance Company, in favor of John F. and Lucy E. Mudge, is reversed. That portion of the judgment which is in favor of the plaintiff, Max Acker, is affirmed. The cause is remanded for retrial of the issues presented in the cross-action by John F. and Lucy E. Mudge. The cause of action alleged by plaintiff is not to be retried.

Affirmed in part; reversed and remanded in part.

### On Motion for Rehearing.

[9] Appellees, in their motion for rehearing, complain that this court had no jurisdiction to reverse the judgment in so far as it disposed of the issues against the American National Insurance Company in favor of the Mudges. The reason urged by appellees is that the American National Insurance Company did not appeal from the judgment. We followed the procedure expressly authorized by the Supreme Court in the case of Thompson v. Kelley, 100 Tex. 536, 101 S. W. 1074. In that case the question was certified to the Supreme Court and the answer, through Associate Justice Williams, was that, even though some of the parties did not appeal, yet the appeal brought up the entire case, and brought all the parties before the appellate court in such way as to give jurisdiction to render any judgment to which the appellants may show themselves to be entitled.

In the present case, the notes were held by the American National Insurance Company merely as collateral security. Closner & Sprague, two of the appellants, were the owners of the notes. These notes by the judgment of the trial court were canceled, and the amount thereof was applied as a partial payment on the amount of the judgment rendered against Closner & Sprague in favor of the Mudges on the action for deceit. Since there should have been no judgment against appellants for deceit, the notes

should not have been canceled. That, under these circumstances, this appellate court has the jurisdiction to reverse the judgment against the American National Insurance Company, in accordance with the decision of the Supreme Court above mentioned, is fully supported by the following decisions: Reeves v. McCracken, 103 Tex. 416, 128 S. W. 895; Tynberg v. Cohen, 76 Tex. 409, 13 S. W. 315; Mosler Safe Co. v. Atascosa County, 184 S. W. 324.

We have carefully reconsidered our original opinion, in the light of the motion for rehearing, but believe a correct disposition has been made of the case. The motion for finding of additional facts and to correct our finding of other facts has all been carefully considered, and the conclusion reached that we have stated the material facts correctly, though much of the testimony proving those facts has been properly omitted.

The motion for rehearing and the motion for additional findings of fact are overruled.