CHRISTIAN ENGLEHART, PLAINTIFF IN ERROR, V. PEORIA PLOW COMPANY, DEFENDANT IN ERROR.

**Negotiable Instruments**: INDORSEMENT OF NOTE BY AGENT OF PAYEE. One D. was a local agent for a Harvester Machine Company, for the sale of its machines. He sold a machine to E., taking his notes therefor, payable to the order of the Harvester Company. One of these notes D. indorsed as follows: " St. Paul Harvester Works, per J. H. Dorrance, agent," and by an arrangement with a person represented to be the general agent of said company, took said note for his commissions, and afterwards passed it to the plaintiff; *Held,* That the property of the Harvester Company in said note was not divested by such indorsement, and that the plaintiff could not recover thereon.

ERROR to the district court for Fillmore county.   Tried below before MORRIS, J.

*J. W. Eller,* for plaintiff in error.

*A. A. Whitman,* for defendant in error.

COBB, J.

This was an action on a promissory note executed by the defendant to the Saint Paul Harvester Works, an incorporated company. The following is a copy of the note as set out in the petition.

"FAIRMONT, July 12, 1882.

For value received, on or before the 1st day of November, 1883, I promise to pay to the order of Saint Paul Harvester Works sixty-five dollars at the office of Fillmore Co. Bank, in Fairmont, Neb., with interest at ten per cent per annum from date until paid. Agreed that if paid within fifteen days after maturity, then the interest shall be seven per cent. And I further agree that the express condition of the sale and purchase of the harvesting machine, for which this note is given, is such that the title, ownership, or right of possession does not pass from the said Saint Paul Harvester Works until this note is paid in full. That the Saint Paul Harvester Works have full power to declare this note due, and take possession of said machine at any time they deem themselves insecure, even before the maturity of the note, and to sell the said machine at public or private sale, the proceeds thereof to be applied upon the balance of the price. (Here follows a property statement).

Signed,   CHRISTIAN ENGLEHART."

The petition alleged that the said note was endorsed as follows:

"Dated this 15th day of Nov., 1882, St. Paul Harvester Works per J. H. Dorrance, agent," and also alleges that "said note was endorsed by the Saint Paul Harvester Works as aforesaid, and delivered for a valuable consideration to the plaintiff. No part of said note has been paid,

and there is now due thereon from the defendant to the plaintiff the sum of sixty-five dollars," etc.

The defendant made answer admitting that he made the note; denied that the said note was ever delivered to the Saint Paul Harvester Works. Alleged that the Saint Paul Harvester Works never sold, assigned, or transferred said note to the plaintiff. That J. H. Dorrance had no authority from the Saint Paul Harvester Works to make any endorsement upon said note. Denied that the Saint Paul Harvester Works endorsed and delivered said note to plaintiff. Denied that the Saint Paul Harvester Works endorsed and delivered the said note to the plaintiff for any consideration.

2. Defendant says that said note was made as part consideration for a Saint Paul Binder Machine; that the agreed price for said machine was one hundred and thirty dollars; that he made the note in suit and one other note of the same amount and date; that the said other note was delivered to the said Saint Paul Harvester Works. Defendant says that said binder machine was warranted in writing to be a good machine to bind grain, and that said machine was wholly worthless and would not do good work, and was wholly worthless for the purpose for which it was made. That the said other note which was given for said machine was of the same date of the note in suit and for the sum of sixty-five dollars. That said Saint Paul Harvester Works acknowledged that said machine was worthless, and settled with defendant for said machine and delivered up the said other note and received in settlement for said machine the sum of twenty dollars.

The plaintiff replied to said answer:

1. That said J. W. Dorrance had authority from the Saint Paul Harvester Works to endorse and transfer said note.

2. Denies that said machine was worthless and would not do good work, but alleges that it was a good machine,

and alleges that said warranty was not absolute but was conditional, and that defendant has wholly failed to perform any of the conditions precedent on his part.

There was a trial to a jury, with a verdict and judgment for the plaintiff. The defendant brings the cause to this court on error.

Upon the trial, as appears by the bill of exceptions, the plaintiff offered and gave in evidence a stipulation signed by the respective attorneys, of which the following is a copy:

### "STIPULATION OF CERTAIN FACTS.

"That the note in suit was given in part consideration for a St. Paul harvesting machine; that J. H. Dorrance was agent for the sale of machines for the St. Paul Harvester Works, and as such agent sold said machine to defendant; that said machine was warranted in writing to be a good machine and do good work; that the said J. H. Dorrance was also the agent for plaintiff for the sale of plows, and was indebted to said plaintiff; that said note was set apart to said J. H. Dorrance as commission as agent for the St. Paul Harvester Works, and said Dorrance delivered said note to plaintiff (without any notice to plaintiff of any equities against said note) on account of his indebtedness to said plaintiff; that said J. H. Dorrance indorsed on the back of said note the words, 'St. Paul Harvester Works, per J. H. Dorrance, Agent,' without the knowledge of the St. Paul Harvester Works."

Defendant admits the incorporation of plaintiff, as alleged in petition.

Plaintiff also gave in evidence the note as herein copied, and introduced J. H. Dorrance as a witness on its behalf, who testified as follows:

Q. Are you the same J. H. Dorrance who made this sale and took this note of Mr. Englehart?

A. Yes, sir.

Q. You took the note and transferred it?

A. Yes, sir.

Q. State to the jury how that happened?

A. We took the note as commission for the sale of Harvesters.

Q. By the court. It was given you by the Saint Paul Harvester Works for your commission?

A. Yes, sir.

Q. What did you do with that note?

A. I turned it over to the Peoria Plow Company for some rakes.

Upon cross-examination he testified as follows:

Q. You was the agent of the Saint Paul Harvester Works for the sale of this machine?

A. Yes, sir.

Q. That is all you was agent for, was it?

A. Yes, sir.

Q. Was this note in suit here in possession of the Saint Paul Harvester Works?

A. Yes, sir.

Q. How did it come to be there?

A. They took them and looked them over.

Q. Who took them and looked them over?

A. I forget his name.

Q. Where did the Saint Paul Harvester Works do business at that time?

A. In Omaha.

Q. They had a branch office at Omaha?

A. Yes, sir.

Q. Their headquarters were at Saint Paul?

A. Yes, sir.

Q. Did it ever go to that office?

A. No, sir.

Q. You kept possesion of it all the time except a few minutes, while you were looking them over?

A. No, sir. Mr. Parsons had the notes over night and looked them over.

Q.  In the morning this note was handed back to you as your commission?

A.  Yes, sir.

Q.  Who was that from?

A.  Mr. Parsons.

Q.  By the court.  He is the general agent of the company?

A.  Yes, sir.

Q.  How do you know?

A.  Because we took commission from Mr. Parsons for selling machinery.  We never saw the Saint Paul Harvester Company.  We made our contract with him.

Q.  Is that the only way you know that he is the general agent of the company?

A.  Yes, sir.

Q.  When did you deliver this note to the Peoria Plow Company?

A.  Some time in November, 1883, I think it was. Perhaps it was in 1884.  I know what day it was that we got the note.

Q.  You was not the agent of the Saint Paul Harvester Works, and had authority to sign your name as agent for the transfer of their notes?

A.  I don't know whether I did or not.

Q.  Did you ever have any authority from the company to sign their name on notes?

A.  I don't know.  I had letters directed as agent for the Saint Paul Harvester Works.

Q.  That was as agent for the sale of their machinery?

A.  Yes, sir.

Q.  They didn't give you any direction to sign their name on their notes?

A.  No, sir; not that I know of, only I was acting as their agent.

The plaintiff having rested his case, the defendant was sworn as a witness in his own behalf.  Whereupon his counsel put to him the following questions:

Q. You may state if you received the machine for which this note was given?

Whereupon the court excluded all evidence relating to the machine on the warranty or anything connected with it, for the reason that the same is incompetent.

Counsel then put the following :

Q. You may state whether the machine for which this note was given was a good machine and would do good work?

Upon objection by counsel for plaintiff as incompetent and irrelevant, the objection was sustained by the court and the evidence excluded.

And the following:

Q. You may state to the jury whether or not the machine for which this note was given would do good work, or was of any value as a machine?

Objected to and excluded.

Whereupon the counsel for defendant offered to prove by the witness that the machine in question was warranted to do good work and to be a good machine, and that it was wholly worthless and could not be used for the purpose for which it was sold. The offer was refused by the court.

Defendant having rested his case, the court instructed the jury as follows:

"You will find for the plaintiff and assess his damages at the amount of the note and interest thereon to the first day of this term, according to the tenor thereof."

The pleadings in the case are scarcely sufficient to present a case free from doubt as to the admissibility of evidence to prove a warranty and breach thereof of the machine for which the note was given, even if sued by the payee, but I think they are sufficient to raise the question of the ownership of the note by the plaintiff. If it appeared from the evidence that the endorsement and transfer of the note to the plaintiff was made by Dorrance for a consid-

eration moving from the plaintiff to the Harvester Company, the payee named in the note, it would then be simply a question of authority on the part of Dorrance, as agent, to make the endorsement so as to pass the property of his principal in the note to the endorsee, and even then we look in vain for evidence of such authority. When on the stand he testified that he did not know whether he had such authority or not, and the transaction between him and Parsons, another agent, as he testifies, of the Harvester Company, a general agent fails to develop any authority or power in either of them to indorse the notes of the company. But the case involves another and quite a different question. It is not claimed that the endorsement was made by the payee through its agent to the plaintiff upon a consideration moving from one to the other, but that it was made by the payee to Dorrance himself upon a consideration moving from him to the payee, to-wit, his commissions, and a long time afterwards, by an independent and separate transaction, passed to the plaintiff, by Dorrance in his own right, "for some rakes."

In order to uphold this transaction we must hold that an agent for the sale of agricultural machinery may by virtue of his agency indorse a note taken by him for such machinery, payable to the order of his principal, to himself, in payment for his commissions, and thereby divest his principal of property in such note.

Even if the agency of Dorrance had included generally the power and duty of indorsing the notes of his principal, an indorsement thereof to himself would be void. I quote from Story on Agency, § 210. "In this connection, also, it seems proper to state another rule in regard to the duties of agents, which is of general application, and that is, that in matters touching the agency, agents cannot act so as to bind their principals where they have an adverse interest in themselves. This rule is founded upon the plain and obvious consideration that the princi-

pal bargains in the employment for the exercise of the disinterested skill, diligence, and zeal of the agent for his own exclusive benefit. It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the interests of his principal as far as he lawfully may; and even if impartiality could possibly be presumed on the part of an agent, where his own interests were concerned, that is not what the principal bargains for; and in many cases it is the very last thing which would advance his interest. * * * If, then, the seller were permitted as the agent of another to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other, and thus a temptation, perhaps in many cases too strong for resistance by men of flexible morals, or hackneyed in the common devices of worldly business, would be held out, which would betray them into gross misconduct, and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest precepts of christianity."

The above principles, more generally applied to cases of the sale of property, are equally applicable to cases of the transfer of notes or other choses in action, by indorsement or otherwise.

In answer to the possible suggestion that the indorsement of the note in the case at bar is voidable rather than void, I quote from Story the concluding paragraph of the section above cited:

"Of course it is to be understood as a proper qualification of the doctrine that the principal has an election to adopt the act of the agent or not; and that if after a full knowledge of all the circumstances he deliberately and freely ratifies the act of the agent, or acquiesces in it for a great length of time, it will become obligatory upon him, not by its own intrinsic force, but from the consideration

4

that he thereby waives the protection intended by the law for his own interest, and deals with his agent as a person *quoad hoc,* discharged of his agency."

The plaintiff in its petition alleged the indorsement of the note sued on by the payee therein named to the plaintiff, as it must necessarily do, the note being drawn payable to order. This fact is denied by the defendant in his answer. It was not legally proved at the trial. It necessarily follows that the court erred in directing a verdict for the plaintiff.

The judgment of the district court is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

THE other judges concur.