Vol. 36]    JANUARY TERM, 1893.    869

Henry & Coatsworth Co. v. Starr.    Jansen v. Williams.

HENRY & COATSWORTH COMPANY, APPELLANT, V. ED-
WARD I. STARR ET AL., APPELLEES,

AND

HENRY & COATSWORTH COMPANY, APPELLANT, V. ED-
WARD I. STARR ET AL., APPELLEES.

FILED MAY 2, 1893.   Nos. 4697, 4698.

---

ALBERT W. JANSEN ET AL. V. JOHN C. WILLIAMS.

FILED MAY 3, 1893.   No. 4820.

1. Instructions should be given clearly, concisely, and without con-
tradictory statements of the rules by which the jury should be
governed.   If, however, the instructions are not in compliance
with this requirement, the verdict will not be set aside, if, upon
the evidence, no other verdict could be sustained.

2. Principal and Agent: SALE OF LAND: PURCHASE BY AGENT.
An agent is required to disclose to his principal all the infor-

mation he has touching the subject-matter of the agency; and his relation to his principal forbids his becoming a purchaser thereof for his own benefit in any way without the full knowledge by the principal of this fact, and the principal's acquiescence therein with such knowledge. The burden of proving such knowledge and acquiescence is upon the agent.

3. ———: DUTIES OF AGENT: COMMISSION. A commission cannot be collected by the agent for his services as such if he has willfully disregarded, in a material respect, an obligation which the law devolves upon him by reason of his agency.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*Jeffrey & Rich,* for plaintiffs in error.

*Adams & Scott, contra.*

RYAN, C.

This action was brought by the defendant in error to recover the sum of $100, retained as commission from the proceeds of the sale of real property, effected by the plaintiffs in error. The petition alleged the employment of plaintiffs in error to sell said real property for the sum of $3,000, and that the plaintiff named in said petition meantime reserved for himself the right to sell said property, if he met with an opportunity to do so, before the same should be sold by plaintiffs in error; that soon after such employment the plaintiff below entered into negotiations with one E. T. Hartley for the sale of said property, and was about to sell said property to said Hartley for the sum of $3,300; that during such negotiations with said Hartley, plaintiffs in error, for the purpose of preventing the defendant in error from making said sale, and wrongfully compelling the defendant in error to pay plaintiffs in error a commission of $100, induced said Hartley to abandon his negotiations with defendant in error and agree to pay to them, the plaintiffs in error, $3,000 for

said property; and that thereupon plaintiffs in error represented to defendant in error that they had sold said property for $3,000 to a good responsible party, and induced the defendant in error to execute a deed to Albert W. Jansen, one of the plaintiffs in error, and defendant in error executed the same believing that said grantee was another than the said plaintiff in error, and thereby plaintiffs in error deceived and defrauded the defendant in error, to defendant in error's damage in the sum of $100.

The answer admitted the placing of said property in the hands of plaintiffs in error for sale at $3,000, but alleged that said E. T. Hartley was obtained by plaintiffs in error as an original purchaser, to whom they sold the property without any knowledge of any previous negotiations with defendant in error, and that the deed was taken to said Jansen only for the purpose of securing money advanced to said Hartley, and that the acts in connection with said transaction were in good faith. To this answer there was a reply in the nature of a general denial.

The testimony was conflicting as to some matters which are deemed of minor importance, but as to such as were essential to the determination of this case the difference was but slight. It was fairly deducible from the testimony that Williams employed Jansen and Murphy to sell the real property in question; that he afterwards had negotiations with said Hartley for an exchange of said property for property owned by Mr. Hartley, of the fair value of $3,300; that Hartley, pending these negotiations, went to Messrs. Jansen and Murphy, and, learning from them that the property could be purchased from them for $3,000, he dropped the negotiations with Williams; that for some reason the title to the property was taken from Williams and wife to A. W. Jansen, one of the plaintiffs in error, whose identity with his agent of that name Williams testifies he was unaware of when said deed was executed; that Williams inquired of Murphy who was the purchaser, and

was informed by Murphy that the purchaser did not wish
his name known in the matter, and therefore did not dis-
close it; that Jansen, in answer to the same inquiry of Will-
iams, met it with the same refusal, at the same time saying
that it made no difference, as the party was good. It was
testified by Jansen and Murphy on the trial in the district
court that the reason the title was taken in Jansen's name
was, that Hartley was not able just then to advance the
money to make the cash payment, and therefore this money
was advanced by plaintiffs in error to insure the present
consummation of the trade, rather than to wait ten or twelve
days until Hartley would have money which would then
be due him. Mr. Murphy fixed the date on which Mr.
Williams consented to accept $3,000 for the property at
September 7, and testifies that, on account of defects in the
field notes, suggested by plaintiffs in error, the deeds were
not executed and delivered until about three weeks after
that date. It is not shown by the testimony when Mr.
Hartley obtained his money and paid it to plaintiffs in error.
The fact that the settlement of the matter was held in abey-
ance until the expiration of a greater time than was nec-
essary for Mr. Hartley to obtain his money, on his own
estimate, to repay Jansen and Murphy, is possibly of no sig-
nificance, and yet it might have been one circumstance con-
tributing to the injury complained of. It would not be
strange, or wholly illogical, if from the circumstance that
the title was not really taken in the name of Jansen until
after the time Hartley's money was due, the jury should have
inferred that delays were interposed by plaintiffs in error to
prevent the consummation of the trade until Hartley put
up his own money with eight per cent per annum for the
interim to repay Jansen his advancement.

Upon the admission or rejection of evidence no serious
question for our determination was presented. The scope
of the cross-examination to be allowed is largely in the
discretion of the trial judge, and we cannot see that such

discretion was improperly exercised. As the only alleged error upon that score is sufficiently met by this general observation, it will not receive further attention.

There were some instructions given at the request of the plaintiffs in error which presented the law more favorably to the plaintiffs in error than the facts warranted, but of these the plaintiffs in error cannot complain. These instructions based the rights of the plaintiffs in error to a commission upon but a partial statement of the facts upon which such rights depended. For instance, the first paragraph of the instructions given at the request of the plaintiffs in error was as follows : " You are instructed that if you find from the evidence that defendants Jansen and Murphy negotiated the sale of the plaintiff's property to Hartley, or to Jansen for Hartley, upon the terms stipulated by Williams at the time he placed the property in their hands for sale without any knowledge of the previous negotiations between plaintiff and Hartley, then your verdict should be for the defendants." This instruction leaves out of consideration the fact that Jansen was the agent of Williams, who, as such, was bound to obtain for his principal the best price obtainable. It further recognizes the unqualified right of an agent to purchase property of a principal placed in his hands for sale. It gives the agent authority to deal with the property absolutely as he sees fit, provided he obtains the price fixed by the principal, and has no knowledge that the principal is in negotiations for a better price, and this to the extreme of buying the property himself, provided he buys for some one else, a very slight guaranty of protection to the principal. Most likely if plaintiffs in error had been successful in the district court these considerations would have necessitated a reversal of the judgment. In this connection it might not be amiss to suggest that the trial judge has a duty to perform, as well in the refusal of pernicious instructions as in giving correct ones. The jury is supposed to obtain

its sole ideas of the law applicable to the case from the presiding judge.    Upon him therefore devolves the duty of clearly and concisely instructing rather than hopelessly confusing.    The statute requires the instructions to be in writing, that they may be prepared with due deliberation, and with the exactness necessary to assist jurymen unlearned in the law to apply principles perhaps for the first time brought to their attention.    These instructions should therefore be clear and concise, and, above all things, should be exact, and free from contradictions.    These remarks are made in this connection, for, with the instructions referred to above, there were given others entirely free from objection.

At the request of the defendant in error the court instructed the jury as follows: "An agent ought as far as possible to represent his principal, and to the best of his ability he should endeavor to successfully accomplish the object of his agency.    It is also his duty to keep his principal fully and promptly informed of all the material facts or circumstances which come to his knowledge, and since he is expected to represent his principal, he cannot have a personal interest adverse to the interest of his principal, and if he deals with the subject-matter of the agency, the profits will, as a general rule, belong to the principal and not to the agent.    In all things he is required to act in entire good faith towards his principal.    There are duties which the law imposes upon an agent without any express stipulations on the subject, and one of these duties of an agent is to keep his principal informed of his acts, and to inform him within a reasonable time of sales made, and to give him a timely notice of all facts and circumstances which may render it necessary for him to take measures for his security.    An agent cannot act for his principal and for himself in the same transaction by being both buyer and seller of property, and has no right to act as the agent for others for the purchase of property without the

knowledge or consent of such owner, nor to take any advantage of the confidence which his position inspires to obtain the title in himself. If you find that the defendants were the agents of the plaintiff for the sale of the property mentioned in the petition, and that in making the sale they purposely kept from the plaintiff any of the material facts touching said sale for the purpose of subserving their own interest, and intended to and did keep the plaintiff in the dark as to such facts until after the said sale was consummated and deed executed by said plaintiff, then I instruct you that they are not entitled to a commission for selling the same."

In *Stettnische v. Lamb*, 18 Neb., on page 627, is this language: "The rule is well settled that a party will not be permitted to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform in relation thereto which is inconsistent with his character as a purchaser on his own account." This statement was sustained by several authorities cited, and of its correctness there can be no doubt. In the light of adjudged cases and of the text-books, therefore, let us see what duty the plaintiffs in error had to perform towards the defendant in error in respect of the real property, which was the subject-matter of the agency between them. Upon this subject the following language is found in Pomeroy's Equity Jurisprudence, section 959 : " In dealings without the intervention of his principal, if an agent, for the purpose of selling property for the principal, purchases it himself, or an agent, for the purpose of buying property for the principal, buys it from himself, either directly or through the instrumentality of a third person, the sale or purchase is voidable; it will always be set aside at the option of the principal; the amount of consideration, the absence of undue advantage, or other similar features, are wholly immaterial; nothing will defeat the principal's right of remedy, except his own confirmation after full knowledge of all the facts."

In *Porter v. Woodruff*, 36 N. J. Eq. Reports, on page 179, *et seq.*, the following language is found: "The general interests of justice and the safety of those who are compelled to repose confidence in others alike demand that the courts shall always inflexibly maintain that great and salutary rule which declares that an agent employed to sell cannot make himself the purchaser, nor if employed to purchase, can he be himself the seller. The moment he ceases to be the representative of his employer and places himself in a position towards his principal where his interests may come in conflict with those of his principal, no matter how fair his conduct may be in the particular transaction, that moment he ceases to be that which his service requires and his duty to his principal demands. He is no longer the agent, but an umpire; he ceases to be the champion of one of the contestants in the game of bargain, and sets himself up as a judge to decide between his principal and himself what is just and fair. The reason of the rule is apparent; owing to the selfishness and greed of our nature, there must, in the great mass of the transactions of mankind, be a strong and almost ineradicable antagonism between the interests of the seller and buyer, and universal experience has shown that the average man will not, where his interests are brought in conflict with those of his employer, look upon his employer's interest as more important and entitled to more protection than his own. In such cases the courts do not stop to inquire whether the agent has obtained an advantage or not, or whether his conduct has been fraudulent or not, when the fact is established that he has attempted to assume two distinct and opposite characters in the same transaction, in one of which he acts for himself, and in the other pretended to act for another person, and to have secured for each the same measure of advantage that would have been obtained if each had been represented by a disinterested and loyal representative, they do not pause to speculate concerning

the merits of the transaction, whether the agent has been able so far to curb his natural greed as to take no advantage, but they at once pronounce the transaction void, because it is against public policy. The salutary object of the principle is not to compel restitution in case fraud has been committed, or an unjust advantage gained, but to elevate the agent to a position where he cannot be tempted to betray his principal. Under a less stringent rule, fraud might be committed or unfair advantage taken and yet, owing to the imperfections of the best of human institutions, the injured party be unable either to discover it or prove it in such a manner as to entitle him to redress. To guard against this uncertainty, all possible temptation is removed and the prohibition against the agent acting in a dual character is made broad enough to cover all his transactions. The rights of the principal will not be changed nor the capacities of the agent enlarged by the fact that the agent is not invested with a discretion, but simply acts under an authority to purchase a particular article at a specified price, or to sell a particular article at the market price. No such distinction is recognized by the adjudications, nor can it be established without removing an important safeguard against fraud. (*Benson v. Heathorn*, 1 You. & Col. [Eng.], 326; *Conkey v. Bond*, 34 Barb., 276, 36 N. Y., 427.)

In *Ruckman v. Bergholz*, 37 N. J. L., 440, is found the following language: "The judge, distinguishing this case from one where the price was left open to the negotiations of the agent, instructed the jury that though the plaintiff was interested in the purchase when it was made, he might, nevertheless, recover his commissions as agent, notwithstanding the defendant was not aware of the existence of such interest. In this there was error, for it is a fundamental rule that an agent employed to sell cannot himself be a purchaser unless he is known to his principal to be such. (Dunlap's Paley on Agency, 33; Story, Agency, sec.

210; and other cases cited.) And this rule is not inapplicable, nor is it relaxed when the employment is to sell at a fixed price, for it springs from the prohibitory policy of the law adopted to prevent the abuse of confidence and to remove temptation to duplicity. It requires a man to put off the character of agent when he assumes that of principal."

Mechem, Agency, sec. 455, states the rule as follows: "The agent will not be permitted to serve two masters without the intelligent consent of both. As is said by a learned judge, so careful is the law guarding against the abuse of fiduciary relations that it will not permit an agent to act for himself and his principal in the same transaction, as to buy of himself, as agent, the property of his principal or the like. All such transactions are void as it respects the principal, unless ratified by him with a full knowledge of all the circumstances. To repudiate them he need not show himself damnified. Whether he has been or not is immaterial. Actual injury is not the principle the law proceeds upon in holding such transactions void. *Fidelity in the agent* is what is aimed at, and as a means of securing it the law will not permit the agent to place himself in a situation in which he might be tempted by his own private interest to disregard that of his principal." .(Citing *People v. Township Board of Overyssel*, 11 Mich., 222.) "This doctrine, to speak again in the beautiful language of another, has its foundation not so much in the commission of actual fraud as in that profound knowledge of the human heart which dictated that hallowed petition, 'Lead us not into temptation but deliver us from evil,' and that caused the announcement of the infallible truth that 'a man cannot serve two masters.'"

These quotations we shall properly close with the language of Story on Agency, sec. 210, quoted with the approval of this court in *Englehart v. Peoria Plow Co.*, 21 Neb., 48: "In this connection, also, it seems proper to

state another rule in regard to the duties of agents, which is of general application, and that is, that in matters touching the agency, agents cannot act so as to bind their principals where they have an adverse interest in themselves. This rule is founded upon the plain and obvious considerations that the principal bargains in the employment for the exercise of the disinterested skill, diligence, and zeal of the agent for his own exclusive benefit. It is a confidence necessarily reposed in the agent that he will act with a sole regard to the interests of his principal as far as he lawfully may; and even if impartiality could possibly be presumed on the part of the agent where his own interests are concerned, that is not what the principal bargains for, and in many cases it is the very last thing which would advance his interest. If then a seller were permitted, as an agent of another, to become the purchaser, his duty to his principal and his own interest would stand in direct opposition to each other, and thus a temptation, perhaps in many cases too strong for resistance by men of flexible morals, or hackneyed in the common devices of worldly business, would be held out, which would betray them into gross misconduct, and even into crime. It is to interpose a preventive check against such temptations and seductions that a positive prohibition has been found to be the soundest policy, encouraged by the purest precepts of Christianity."

It is unnecessary to quote further illustrations of the correctness of the instructions given the jury at the request of the defendant in error. The same principles announced in these instructions pervade all the text-works and the decisions of the courts which have to deal with the relations of principal and agent. In none of them is recognized the right of the suppression of important facts of which the principal had a right to be informed as a part of the "secrets of the real estate business," as was claimed by plaintiff in error Murphy in his testimony. The evidence fully sustains the verdict which was rendered by the jury.

Indeed, a verdict different would probably of necessity have been set aside, as has been shown by abundant cita- tion of text-writers and authorities. The instructions clearly gave the law to the jury as applicable to the evi- dence, and the judgment of the district court must there- fore be

AFFIRMED.

THE other commissioners concur.