## JOHNSON v. KNAPPE.

## SAME v. METZGER et al.

Assignments of error not discussed in the brief are abandoned.

A loan company took a mortgage on land and assigned it to a trustee. The assignment was insufficient because of a defective acknowledgment. The loan company having failed, a new company was formed to carry on its business, and plaintiff, an employee of the company, and who had been an employee of the former company, with knowledge of the mortgage indebtedness, obtained a deed from the mortgagor, who was given to understand that by giving it the mortgage would not be foreclosed. Plaintiff had no authority to purchase and was prohibited from speculating in land passing through the company's hands, and he concealed his deed until the company foreclosed through the trustee, plaintiff having supervised the proceedings as the company's agent, and the land had passed to purchasers, after which he sued to obtain the land. Held that, by leading the mortgagor to believe that the deed was being procured to avoid foreclosure, he became trustee for the mortgagee and would have become such if he had not been an agent of the mortgagee, and if his acts had been unknown to it, and he held the title for the benefit of anybody taking the land through the foreclosure, though he did not know of the defective acknowledgment when he took his deed, and did not take it for the purpose of taking advantage of such defect.

Plaintiff taking advantage of and using the knowledge which he had gained as the mortgagee's agent, to acquire the deed, he became a trustee for the mortgagee regardless of any knowledge of the mortgagee that he was so acting.

As agent of the mortgagee with no authority to speculate in land passing through the mortgagee's hands, he could not purchase the fee and hold it as his own when the mortgagee through him was foreclosing on the land, since it put him in a position where his

interest might be antagonistic to those of his principal, and in doing so he became the involuntary trustee for his principal.

(Opinion filed, Nev. 17, 1909.)

Appeal from Circuit Court, Dawson County. Hon. FRANK B. SMITH, Judge.

Consolidated actions by S. J. Johnson against Carl Knappe and against Gottlieb Metzger and another. From decrees for defendants and orders denying a new trial, plaintiff appeals. Affirmed.

*M. L. Sears* and *T. J. Spangler,* for appellant. *A. E. Hitchcock,* for respondents.

WHITING, J. The facts in these two cases being the same in so far as material to the issues therein, they were, by stipulation of the parties and consent of the trial court, submitted together, and are likewise so submitted upon this appeal. These actions were brought to determine adverse claims to two pieces of real estate; both parties in each action claiming from the same common source—the plaintiff through a deed, and the defendants through the foreclosure of a mortgage, which mortgage was given by plaintiff's grantor prior to the deed to plaintiff. The actions were tried to the court without a jury, and, the court having made its findings of fact and conclusions of law in favor of the defendants and entered decrees in conformity therewith, the plaintiff moved for a new trial in each action. Said motion being denied, he has appealed to this court from such decrees and orders denying a new trial.

There were contained in the bill of exceptions herein numerous assignments of error; some of them going to the question of the sufficiency of the evidence to support the findings of fact. Appellant, however, has abandoned the assignments alleging insufficiency of evidence by not discussing the same in his brief and attempting to point out in what respect the evidence was insufficient to support any designated finding or part thereof, and for this reason, while the appellant herein has in his brief, at times, referred to the evidence instead of to the findings, we are not concerned with any question of the sufficiency of evidence to support

such findings. There are in such bill of exceptions numerous assignments of alleged errors of the court in its rulings upon admission of testimony. These also have been wholly abandoned by the appellant. Appellant assigns the insufficiency of the pleading to support some of the findings, but has apparently abandoned this assignment also, failing to point out such insufficiency in his argument, and, moreover, we are fully satisfied that the pleadings of the respondents are amply broad and sufficient upon which. to base the findings of the trial court. This leaves for our consideration the one question of whether or not the findings of fact herein are sufficient to support the conclusion of law and the decrees entered theron.

The facts as found by the trial court are, briefly stated, as follows: One Daniel Nickish obtained a patent from the United States to these two pieces of land, and under such patents was the owner thereof when, on October 30, 1891, he and his wife executed and delivered a mortgage on said lands in favor of the Fidelity Loan & Trust Company, a corporation dealing in mortgage securities and transacting its business at Sioux City, Iowa. That on or about January 7, 1892, such loan company assigned said mortgage to one Moncreiff et al as trustee, which assignment was recorded January 9, 1892, in the proper office for such recording. The acknowledgment attached to such assignment was defective, being in the form held insufficient by this court in the case of Holt v. Metropolitan Trust Co., 11 S. D. 456, 78 N. W. 947. On or about November 9, 1895, Nickish and wife by warranty deed conveyed these two tracts of land to plaintiff, which deed was soon thereafter placed on record, and which deed recited that the title was suject to the "incumbrances of record at this date." Plaintiff paid Nickish $25 for such deed. Besides the mortgage above mentioned, at the time plaintiff took his deed, a second mortgage was on record against said lands in favor of another company in no manner connected with the parties to this action, which second mortgage secured a considerable indebtedness. The first mortgage above mentioned remaining unpaid, foreclosure was commenced in the name of the trustees named in the assignment of such mortgage; the fore-

closure being by advertisement, and the first publication being
November 8, 1895. The notice of publication, the sheriff's
affidavit, and the sheriff's certificate were duly filed for record
on December 21, 1895, and such foreclosure proceedings were
in every respect conceded to be regular and valid, save and except
as affected by the faulty acknowledgment of the assignment.
The purchase on foreclosure was made by Otto T. Bannard,
and on December 22, 1896, he assigned the certificate of sale to
one Geo. Edward Shaw, which assignment was duly recorded
January 6, 1897. On December 30, 1896, sheriff's deed issued to
Shaw and was recorded January 26, 1897. January 17, 1899,
Shaw and wife conveyed one tract of this land to Herman Metz-
ger by warranty deed, which deed was duly recorded March 1,
1899, and Metzger thereafter by warranty deed on January 23, 1903,
conveyed this tract to the defendants in the second of these
actions. Since said sale by Shaw, the Metzgers occupied the land
and made improvements thereon. Such sale by Shaw was
for a fair consideration price. After plaintiff received the deed
from Nichish, he leased the lands to Nickish for the year 1896,
reciving rentals $82.90 therefor. Plaintiff failed to redeem the
land from foreclosure, made no improvements thereon, paid no
taxes, and paid none of the mortgage indebtedness. He made no
claim of title against the foreclosure until just prior to the com-
mencement of this action, which was commenced in July, 1906.
The total paid out by plaintiff was the $25 above referred to.
Nickish when he gave the deed understood, from correspondence
had in the negotiations leading up to such deed, that by giving
such deed the land would not be foreclosed on, and the deed was
given by him for the purpose of avoiding a sheriff's sale. From
the time the original mortgage company was organized down to
January, 1895, plaintiff was an employe thereof, being clerk and
traveling representative. January, 1895, the mortgagee failed,
and its business passed into the hands of a receiver. It was part
of plaintiff's duty while employed as above to collect the delin-
quent interest on loans, and he had charge of collecting the in-
terest on the Nickish mortgage. He thus had full knowledge
of the condition of such mortgage indebtedness, and in such

employment plaintiff had correspondence with Nickish about the delinquent interest, prior to the time foreclosure was commenced and prior to the time he obtained his deed.

In 1895 parties holding securities which had been assigned organized a new corporation, known as "Fidelity Security Company." Said Fidelity Security Company was organized for the purpose of liquidating the assets derived from the other company. After this new company was organized, assets of the old company and all its records passed into the possession of the new company; and, while such new company was organized in the state of New York, the business of realizing on the assets of the company was conducted in the office at Sioux City, Iowa. Shaw and Bannard represented the holders of some of these securities. In July, 1895, one T. A. Thompson of Sioux City, Iowa, was appointed as a general western agent for such security company, and Bannard and Shaw, and thereafter Thompson, had full charge personally of the business of said company in relation to such securities, among which securities was this Nickish mortgage. Plaintiff continued in the employ of Thompson from July, 1895, up to 1900, with duties similar to those while under the employ of the old company. When the Nickish mortgage was placed with attorneys for the foreclosure, it was reported upon by plaintiff, and it was through him that the attorneys obtained the papers for the foreclosure. After foreclosure was completed, the title papers passed through plaintiff's hands and were by him forwarded to Shaw, who resided in New York City. Plaintiff on April 19, 1897, made an entry on the record books in the Sioux City office setting forth that he had forwarded the sheriff's deed to Shaw, together with the abstract and opinion thereon, and that there were no incumbrances against said land. The negotiations for transfer of the land to defendants and preparation of necessary papers to transfer title were had at Thompson's office, where plaintiff was employed, and plaintiff had full knowledge of such sale, but never disclosed, except just prior to commencing these actions, to defendants, or any one in their behalf, his having any interest in the land other than what would appear by an examination of the records in the office of

the register of deeds. Plaintiff had no authority to purchase lands or securities held in Thompson's possession, and had been expressly prohibited from any speculation relative to securities and lands which passed through Thompson's hands for the purpose of liquidation. Except by recording his deed, plaintiff never revealed to Thompson, the Fidelity Security Company, Bannard, or Shaw that he claimed any interest in the land or any part thereof. This action was commenced July 25, 1906, prior to which plaintiff had in no manner asserted his claim to said land. Plaintiff was fully conversant with the business conducted by the old company and by the new, in liquidating the affairs of the old company. He was conversant with the manner of disposing of its securities, the details of the office work, and was continually in touch with the work connected with the collection of mortgage loans, foreclosure of mortgages, and disposition of lands after foreclosure. Nickish was a farmer and foreigner and had little knowledge of business pertaining to real estate titles. The defendants were also farmers and foreigners, and with little knowledge of business connected with real estate titles. The facts in the Knappe case are as above except that he received his deed directly from Shaw.

It is the contention of respondents that: (1) Appellant is estopped to question the title of respondents for the reason that by his conduct both active and passive, since acquiring his deed, he has brought about a condition of affairs where it would be unconscionable for him to now assert title as against respondents. (2) Appellant, by taking the deed under conditions then existing, became a trustee of this property for the holders of the mortgage interest, and is therefore estopped to set up any claim of title as against the present cestuis que trust, respondents herein. (3) That statute of limitations bars this action; it being an action to set aside and vacate a foreclosure sale which took place more than 10 years prior to the commencement of this action.

The trial court disregarded, in its conclusions, the question of statute of limitations, and therefore, we must presume, found with appellant thereon, and we need not consider same. The appellant seems to consider the first contention of respondents,

as above stated, to be the only one meriting consideration, and has devoted almost his entire brief to a discussion thereof, and has cited a large number of authorities in support of his position, and appellant barely mentions the second contention, and does not attempt to cite authorities in answer thereto. Appellant in his brief says on this point: "Respondent's counsel seem to place some stress upon the question of agency and upon a rule of the companies that no employes should speculate in property on which they held mortgages, adverse to said companies; but we think the efforts of respondents' learned counsel to place the appellant in the position of agent of the companies, or of any one, in the purchase of this land, is unavailing. It is an admission that he did purchase it, and that he holds title to it, unless he was such agent and only held it in trust for the mortgagees. If so, why did the mortgagee go to the expense of the foreclosure? Why did the mortgagee never call upon appellant to turn over the land? The fact is, as clearly appears from the evidence, that the appellant purchased the land with his own money and for himself, just as he testifies that he did. And respondents' counsel again admits as much when he attempts so strenuously to show that in buying this land the appellant violated a prohibitory rule of the company that employes should not buy in equities adverse to the company. Now it will be noticed: First, that this appellant did not buy adversely to the mortgagee, but subject to the mortgage lien; and, second, that there is a sharp conflict in the evidence as to the existence of any such rule; and, third, that if such rule did exist, and appellant violated it in buying this land, it would not invalidate appellant's title or affect it in any way so far as respondents are concerned, at least—if such could be a legal rule, and not against public policy or in restraint of trade, it would then be only a matter between appellant and his employers."

Without in any way intimating an opinion as to whether or not the facts found by the trial court would sustain the first contention of respondents, we are fully convinced that the respondents are right in their contention that, when the appellant took his deed to the lands in question, a constructive trust was

created, and, that he ever after held the legal title to said lands as a mere trustee for any holder of an interest in said lands under and by virtue of the first mortgage. We are also convinced that appellant became such trustee regardless of whether or not he had received any instructions not to speculate in the lands and securities in which his employers were interested. The appellant became such trustee not only owing to his agency, but even regardless of such agency, and for three separate reasons each of which were sufficient under the facts herein: (1) By leading Nickish to believe that this deed was being procured so as to avoid necessity of foreclosure, he, in taking the deed to himself, became trustee for the mortgagee, even if he was not an agent of such mortgagee, and even if he and his acts were absolutely unknown to the mortgagee. (2) By taking advantage of and using the knowledge he had gained, as agent of the mortgagee, to acquire the deed, he became a trustee for such mortgagee, regardless of any knowledge on part of mortgagee that he was so acting. (3) As agent of the mortgagee, unless he had received express authority so to do, he could not purchase any interest in this property and hold it as his own, which interest might in any manner tend to or be inclined to put him in a position antagonistic to the interests of his principal. A purchase of the fee, when his principal through him was foreclosing on this land, put him in a position where his interests might be antagonistic to those of his principal. He therefore, for this reason, became an involuntary trustee for his principal.

In consideration of the first reason we have advanced, we note findings of the trial court bearing thereon to the effect that, in the correspondence leading up to the execution of this deed, plaintiff gave Nickish to understand that this deed was for the purpose of avoiding a foreclosure. Bearing in mind that he was known to Nickish as the agent of the holder of the mortgage, can there be any question but that Nickish believed, and plaintiff so realized, that this deed was in fact for the benefit of the holder of the mortgage to give to such holder the legal title without a foreclosure? Plaintiff never agreed with Nickish that he would save foreclosure by paying off the indebtedness, and it

cannot be presumed, under the facts found, that Nickish was relying on any belief that plaintiff would pay off such indebtedness. There was only one conclusion that any reasonable man could arrive at, to wit, the title was to be conveyed in the interest of the holder of the mortgage, thus making foreclosure unnecessary. We do not think the existence of the second mortgage (if it was still unpaid, and findings are silent in this respect) would be sufficient to lead to a different conclusion. The case of Rollins v. Mitchell, 52 Minn. 41, 53 N. W. 1020, 38 Am. St. Rep. 519, is directly in point. A married woman, one G., being the owner of the land in controversy, sold to B., giving her sole deed. Afterwards, probably to validate such deed, her husband executed to B. another deed in which the wife did not join. B. conveyed this land, and title was finally acquired by the defendant M.; all conveyances being by warranty deed. A number of years later, M.'s agent entered into contract to sell the land and received earnest money thereon, and the agent furnished the prospective purchaser an abstract of title. Examining the same, the prospective purchaser discovered that M.'s title was invalid, owing to the fact that husband and wife did not join in any deed. The purchaser informed M.'s agent of the defect. The agent failed to inform M., but went to another state and hunted up the original owner, Mrs. G. The court finds that, by representing to Mrs. G. that he wished to procure this deed to perfect the title she had attempted to give B., she, owing undoubtedly to her personal friendship to B., gave such deed for a very small consideration. The agent received the deed which ran to himself. The court says: "It is not necessary that Nichols should have expressly told her that he, or the party for whom he was acting, had purchased of Bardon, and that the deed was desired for the purpose of fixing up that title. It is enough to hold him chargeable as trustee, if he by indirection gave her to understand, or by any means intentionally conveyed to her mind the impression, that such was the fact. A person may make a false representation or fraudulent promise by indirect as well as by direct statements, and even by keeping silence when he ought to speak. Wallgrave v. Tebbs, 2 Kay & J. 321; O'Hara v. Dudley,

95 N. Y. 403, 47 Am. Rep. 53. It is urged, however, that although a fraud may have been committed on Mrs. Gabiou, none was committed on defendant Mitchell; that to charge Nichols, as trustee for Mitchell, either the former must have sustained some fiduciary relation to the latter in respect to the title, or the latter must have had some claim to the land in the hands of Mrs. Gabiou, which he could have enforced against her. We do not so understand the law. The rights of the third person in such cases depend, not upon the fact that he had some legal or equitable claim to the property before the constructive trust was created, but upon the fact that he acquired such right by the trust, as being the party for whose benefit it was intended by the former owner. * * * Within this general principal, if Nichols secured this deed by giving Mrs. Gabiou to understand that it was in support of her original conveyance to Bardon, then he is chargeable as trustee for Mitchell, who holds the Bardon title."

In Gates v. Kelley, 15 N. D. 639, 110 N. W. 770, one Cranmer, being the owner of the land in controversy, had made a loan on same through the plaintiff, and had given to the plaintiff a second or commission mortgage. The first mortgage misdescribed the land. The first mortgage was foreclosed; notice of foreclosure giving the same misdescription as found in the mortgage. Such foreclosure was therefore void. A deed, however, was issued upon such foreclosure in ignorance of the defect, and the land was afterwards conveyed to the plaintiff. Some years thereafter, plaintiff, desiring to sell the land, learned of the defect in the foreclosure and decided to procure title by foreclosing his second mortgage. Plaintiff resided in Minneapolis and was referred to the defendant as a suitable person to act as his attorney in said foreclosure. He wrote to the defendant, sending him this second mortgage, as well as mortgage on a second tract, and told him to proceed at once. The defendant wrote back advising plaintiff that he could not act for him in regards to the Cranmer mortgage, as he was adversely interested. The court determined the following facts to be true: Defendant immediately on receipt of plaintiff's letter inclosing mortgages, hunted up Cranmer and induced him to execute a deed of said

land, leading Cranmer to believe that it was for the purpose of correcting defect in title through some error in name, and leading Cranmer to believe that such deed was running to the holders of such defective title; the deed in fact running to the defendant, and Cranmer not reading the same to ascertain the fact. The court in holding that there was a constructive trust in plaintiff's favor, announced that they do so without any regard to the fact as to whether Kelly was the attorney for plaintiff when he procured the title, stating that they based their conclusions upon fact "that Kelly secured the deed to himself by inducing Cranmer to believe that it was to operate as a conveyance to plaintiff so as to cure the latter's defective title." Among other things, the court stated: "We find that Kelly induced Cranmer to execute the deed by representing himself to be acting in behalf of the claimant under the mortgage, and that Cranmer made the conveyance with the intent that it should operate to remedy a defect in the title claimed under the foreclosure. The grantee of a title so acquired will not be permitted to reap the fruits of his wrongdoing, but will be deemed in equity a trustee of the legal title for the benefit of the person in whose favor it was intended by the grantor that the deed should operate. It is not essential to the application of this rule that the grantee should have violated any trust or confidence reposed in him by the person for whom the deed was intended, or that such third person should have any legal or equitable claim to the land against the grantor."

It will be seen that in the first case above mentioned there existed the fact that it was while acting as agent that the wrongdoer acquired the information of which he made wrong use; but while that might be an additional reason for holding him an involuntary trustee, yet it was not essential to such holding, and was entirely eliminated by the North Dakota court in the determination of the case in that court. No matter whether any relation of trust or confidence exists between the parties against whom and in whose favor the trust is declared, no matter whether they are known to each other, no matter whether the beneficiary

knows of the transaction from which the trust arises, whenever a party conveys property to one party, but for benefit of another, equity steps in and says: "That which ought to be done is regarded as done in favor of him to whom, and against him from whom, performance is due." And that therefore the beneficial interest in the property passed to the intended beneficiary, and enforces this maxim by holding the wrongdoer as the mere trustee of the legal title.

The other two grounds for holding appellant as a trustee may well be considered together, for the reason that an agent hardly ever places himself so that he comes within the third ground without also coming more or less within the second.

The case of Ringo v. Binns, 10 Pet. 270, 9 L. Ed. 420, is often cited as a leading case on the question of constructive trust. The facts in this case being, in substance, as follows: The defendant was employed to look up certain lands owned by his principals, and to make a division thereof among the parties interested therein. It appears that this tract of land was claimed under a grant from the government, but in looking up the said land the defendant ascertained that, owing to certain requisites not having been complied with, no grant had issued. The defendant took out warrants for 600 acres of land and made entries and surveys upon 600 acres of the land in question, and afterwards took grant to same from the government. Having refused to convey to the plaintiffs, his former employers, this action was brought to have a constructive trust declared in the land. The court used the following language: "But how forcibly does the equity of the complainants prevail over any claim of Ringo, when the latter is viewed as their agent at the time he made his entry and surveys upon the land, which he had undertaken to assist in dividing between them. It is said that an unregistered survey gave to them no equitable right in the land, and that, Ringo being only agent for the special purpose of dividing the land, he could rightfully enter and survey it for himself when he ascertained the defect in the title of the complainants. The proposition of a want of equitable right in the complainants is true as against the state, for the time within which the survey should have been returned and

registered before a grant could issue had expired, and the land had fallen into the general mass of ungranted land liable to entry, survey, and grant upon treasury land-offce warrants. But the mistake in the argument is in applying the rights of the state in the land to a right in Ringo, obtained when he was admitting to the complainants his agency for them; and making acknowledgments of their title to others, to enable him more successfully to secure by his artifices a title in the land to himself." It will be seen that this case meets any contention that appellant could make that, inasmuch as Nickish was under no obligation to convey to the owner of mortgage, it was not wrong for the agent to take conveyance to himself; the rule being, not that it would have been wrong for some third party to have purchased of Nickish, but that it was wrong for one who, as agent, had received information, to use such information to gain title for himself.

The case of Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176, is directly in point. The plaintiffs were real estate dealers, whose plan of business was to obtain option on lands and then find purchasers for the same, and, after purchaser was found, procure the lands and make sale thereon. They employed defendant as their agent. Defendant resided in another state, and, under his contract of agency, was to bring purchasers for land. If sales were consummated, he was to get a certain amount per acre besides having his expenses paid. Defendant brought prospective purchasers, and the land was shown by plaintiffs, although they had no option thereon. Plaintiffs knew, however, that it could be purchased at a certain price. No sale was then made. Some time afterwards the defendant announced that he would terminate his employment. After such employment was terminated, defendant went to the owners of this land, while plaintiffs were still trying to effect sale of the same, and purchased the land himself. This action was brought to have the defendant held as a trustee of the title to this land for plaintiffs, and the court so held. Among other things, the court in its opinion stated as follows: "The truth is that the principle of law which controls the determination of this case is not limited

or conditioned by the interests, powers, or injuries of the parties to the fiduciary relations. It is as broad, general, and universal as the relations themselves, and it charges everything acquired by the use of knowledge secured by virtue of these trust relations and in violation of the duty of fidelity imposed thereby, with a constructive trust for the benefit of the party whose confidence is betrayed. It dominates and controls the relation of attorney and client, principal and agent, employer and trusted employe, as completely as the relation of trustee and cestui que trust." and the following quoted from the above opinion bears directly on the third ground: "In Greenlaw v. King, 5 Jur. 19, Lord Chancellor Cottenham, speaking of this doctrine, says: 'The rule was one of universal application, affecting all persons who came within its principle, which was that no party could be permitted to purchase an interest when he had a duty to perform which was inconsistent with the character of a purchaser.' In Hamilton v. Wright, 9 Cl. & Fi. Ill. 1222, Lord Brougham declared that it is the duty of a trustee 'to do nothing for the impairing or destruction of the trust, nor to place himself in a position inconsistent with the interests of a trust.' * * * The rule upon this subject was clearly and not too broadly stated in the American note to Keech v. Sanford, 1 White & T. Lead. Cas. in Eq. (4th Am. Ed.) 62 (*58), in these words: 'whenever one person is placed in such relation to another, by the act or consent of that other or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated.' "

Mechem on Agency, § 468, declares: "If an agent discovers a defect in his principal's title, he cannot use it to acquire a title for himself, and if he does so he will be held to be a trustee holding from his principal." As was well said by the justice in the case of Staats v. Bergen, 17 N. J. Eq. 554: "A trustee may not put himself in a position in which to be honest must be a strain on him." In 1 Perry on Trusts (4th E.) § 206, the author lays down these propositions: "No person whose

duty to another is inconsistent with his taking an absolute title to himself will be permitted to purchase for himself, for no one can hold a benefit acquired by fraud or a breach of his duty. All the knowledge of the agent belongs to the principal for whom he acts, and, if the agent use it for his own benefit, he will become a trustee for his principal. Whenever one person is placed in a relation to another, by the act or consent of that other, or the act of a third person, or of the law, so that he becomes interested for him, or with him, in any subject of property or business, he will in equity be prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has been associated." And again, in the same section, the court says: "If, in matters within the purpose of his agency, he takes a conveyance in his own name, he is a trustee ex maleficio, as if he buys a tax certificate for his principal and then takes the deed in his own name."

But appellant contends that he did no wrong, and these rules of equity do not apply, because he "did not buy adversely to the mortgagee, but subject to the mortgage lien," and also might claim that he should not be holden under these authorities for the reason that he did not know of the defective acknowledgment when he took his deed, and did not take such deed for purpose of taking advantage of such defect. Sufficient answer to both these contentions would be that equity, in controlling the duties and rights of an agent in transactions relating to property in which the principal is interested, acts not only to prevent an actual wrong intended or remove a wrong inflicted, but as often removes the chance for wrong by preventing the chance for temptation. It is true that appellant might have purchased this land, and perhaps did, with no intent to set up any rights against those claiming under the mortgage; but it is very apparent that there was a chance for him to be tempted, to hope that the foreclosure would be defective—even to hope that something might develop to prove the mortgage itself void—and all must admit that, if he bought knowing of the defect in the acknowledgment, it would be such a fraud as to make him a trustee. If then it would have been wrong for him to acquire title, knowing of any defect in

his principal's title and intending to benefit by such defect, for the same reasons, when he buys in ignorance of defects, he cannot afterwards, as against his principal or those claiming under him, upon discovering the defects, in any wise claim any rights growing out of such defects. One act would be as unconscionable as the other.. Equity will not even allow the agent to show he was ignorant of the defects when he made the purchase. It will not weigh the evidence pro and con, but rather say to the agent: "You must not put yourself in a position where, as regards your individual interests, it makes any difference what the rights of your principal are or may hereafter be.'

As was well said by the court in Jansen v. Williams, 36 Neb. 869, 55 N. W. 279, 20 L. R. A. 207, in speaking of the rights and duties of an agent: "The moment he ceases to be the repre-. sentative of his employer, and places himself in a position towards his principal where his interests may come in conflict with those of his principal, no matter how fair his conduct may be in the particular transaction, that moment he ceases to be that which his services requires and his duty to his principal demands. He is no longer the agent, but an umpire. He ceases to be the champion of one of the contestants in the game of bargain, and sets himself up as a judge to decide between his principal and himself what is just and fair. The reason of the rule is apparent. Owing to the selfishness and greed of our nature, there must, in the great mass of the transactions of mankind, be a strong and almost ineradicable antagonism between the interests of the seller and the buyer; and universal experience as shown that the average man will not, where his interests are brought in conflict with those of his employer, look upon his employer's interests as more important and entitled to more protection than his own. In such cases the courts do not stop to inquire whether the agent has obtained an advantage or not, or whether his conduct has been fraudulent or not. When the fact is established that he has attempted to assume two distinct and opposite characters in the same transaction, in one of which he acted for himself, and in the other pretended to act for another person, and to have secured for each the same measure of advantage that would have been

obtained if each had been represented by a disinterested and loyal representative, they do not pause to speculate concerning the merits of the transaction, whether the agent has been able so far to curb his natural greed as to take no advantage; but they at once pronounce the transaction void because it is against public policy. * * * 'Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit the agent to place himself in a situation in which he might be tempted by his own private interest to disregard that of his principal'—citing People v. Township, 11 Mich. 222. This doctrine, to speak again in the beautiful language of another, has its foundation, not so much in the commission of actual fraud, as in that profound knowledge of the human heart which dictated that hallowed petition, 'Lead us not into temptation, but deliver us from evil,' and that caused the announcement of the infallible truth, 'A man cannot serve two masters.' ".

The holders of the mortgage interest, after the attempted foreclosure, conveyed all their interests in these lands, by warranty deeds, to the respondents. The appellant then became the trustee of the respondents. It appears that, within a year from the time he took deed, he reimbursed himself out of rentals for all he expended for the deed, and nothing remains due him. The trial court might well have decreed that the appellant convey the legal title to respondents; but, inasmuch as a trustee of the naked legal title is estopped from disputing the title of his cestui que trust, the trial court was justified in merely quieting respondents' apparent title under the foreclosure as against the appellant, as was done in this case.

The judgments of the lower court and orders denying a new trial are affirmed.